[No. C058944. Third Dist. Dec. 4, 2009.]

MARTIN BROTHERS CONSTRUCTION, INC., Plaintiff and Appellant, v. THOMPSON PACIFIC CONSTRUCTION, INC., et al., Defendants and Respondents.

Counsel

Law Office of Anthony T. Caso, Anthony T. Caso; Nageley Meredith & Miller and Gregory Alan Meredith for Plaintiff and Appellant.

Solan & Park, Kevin M. Solan and William L. Jacobson for Defendants and Respondents.

Opinion

**CANTIL-SAKAUYE, J.**—Martin Brothers Construction, Inc. (Martin Brothers), a subcontractor employed to work on a public works project, sued the general contractor for the project, Thompson Pacific Construction, Inc., and its surety and bonding companies, American Casualty Company of Reading, Pennsylvania, and Western Surety Company (Thompson Pacific or defendants) for monies owed at the end of the project, including penalties, interest and attorney fees for alleged late progress and retention payments. By the time of trial, however, Thompson Pacific had paid Martin Brothers all amounts owed except for the disputed penalties, interest and attorney fees and the matter proceeded to a court trial solely on those issues. The trial court concluded Thompson Pacific had not violated the applicable prompt payment statutes and entered judgment for Thompson Pacific. The court awarded defendants $150,000 in attorney fees. On appeal, Martin Brothers claims the trial court erred in its interpretation of the statutes and the subcontracts. We affirm the judgment.

## FACTUAL BACKGROUND

Although Martin Brothers raises purely legal issues on appeal, some factual background is helpful in providing context for those issues. Our description of the underlying facts is largely taken from the trial court's statement of decision.[1]

---

[1] The record before us on appeal is limited. Appellant designated an appendix under rule 8.124 of the California Rules of Court. Such appendix contains a very limited number of documents, but does include, among a few other things, the trial court's statement of decision and judgment, the subcontracts between the parties, the final conditional release executed by Martin Brothers, and copies of the last three checks issued by Thompson Pacific to Martin Brothers. The appendix does not include the original complaint, the first amended complaint, any other pleadings or the trial briefs referenced by the trial court in its statement of decision. Furthermore, although the record on appeal includes a reporter's transcript of trial, the record does not include the vast majority of the exhibits referenced by the testimony of the witnesses at trial, which exhibits are necessary to fully understand the testimony. In its opening brief, Martin Brothers's statement of facts does not summarize the evidence from the reporter's transcript, but cites primarily the trial court's statement of decision. Thompson Pacific follows

Thompson Pacific was the general contractor for a public works project of the Elk Grove Unified School District (District) to construct a high school and a middle school in the City of Elk Grove. Thompson Pacific entered into two subcontracts with Martin Brothers for specified site clearing, grading and paving work. The parties treated the two contracts as one.

The subcontracts provided that Thompson Pacific would make monthly progress payments to Martin Brothers of "95% of labor and materials which have been placed in final position and for which the right to payment has been properly documented pursuant to the terms of this agreement." An incorporated addendum to the subcontracts provided: "Subcontractor agrees that payment is not due until Subcontractor has furnished all applicable administrative documentation required by the Contract Documents and the applicable releases pursuant to Civil Code section 3262." The documentation required included lien releases, certified payroll, union letters (verifying payment of prevailing wages), and proof of insurance. The lien releases required included conditional lien releases for Martin Brothers and its subcontractors for the current progress payment and unconditional lien releases for prior payments. (Civ. Code, § 3262, subd. (d)(1), (2).) For final payment of contract retention previously withheld, the subcontracts required conditional final releases for Martin Brothers and unconditional releases for all of Martin Brothers's subcontractors and suppliers (*id.*, subd. (d)(3), (4)), plus an affidavit verifying compliance with prevailing wage laws.

Martin Brothers commenced work in April 2002. During the course of its work, a number of issues arose regarding the work that was being done or extra work that Martin Brothers was directed to do by Thompson Pacific. Some of the extra work was reflected by approved change orders, but Martin Brothers's claimed entitlement to additional compensation for other work was more contentious. For example, Martin Brothers claimed a right to additional payment because it was unable to utilize for infill a stockpile of dirt that was on the property when construction was started. Thompson Pacific disagreed with the claim for additional payment and the trial court found the evidence supported Thompson Pacific's position. Thompson Pacific also disputed Martin Brothers's claim for additional payment for extra cost relating to the use of a different kind of sand when the specific sand called for in the contract was not available. Another significant claim disputed by Thompson Pacific involved Martin Brothers's claim for additional payment related to soil shrinkage. Thompson Pacific's project manager testified Martin Brothers

---

the lead of Martin Brothers and uses the statement of decision as the basis for its statement of facts. We will do likewise. We note Martin Brothers's briefs and designation of record are inadequate for any challenge to the evidentiary support for the trial court's factual findings in the statement of decision. (See *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977–978 [127 Cal.Rptr.2d 271].)

also submitted numerous other payment requests for extra work, some of which were not extra because the work was included in the original subcontracts. The project manager testified Martin Brothers submitted double invoices for costs a few times. Thompson Pacific came to distrust Martin Brothers's claims.

As Martin Brothers performed its work, Thompson Pacific followed a procedure for obtaining progress payments from the District and making payments to Martin Brothers. The procedure involved Thompson Pacific submitting monthly invoices to the District for completed work based on invoices from its subcontractors and estimates of completed work as a percentage of work completed on a schedule of values. In order to establish the amount to be billed to the District, Thompson Pacific met monthly with the District to determine the percentage of work completed that month. After the meeting, the District would issue a "pencil draw" approving a percentage of work completed. This percentage would then be applied to the contract price, together with increases for change orders, to determine the amount of the progress payment the District would pay to Thompson Pacific. Once the amount of the progress payment to be paid was determined, Thompson Pacific translated the percentage approved for Martin Brothers's work and applied that percentage to the contract price, as increased by any change orders. Thompson Pacific would bill the District. Martin Brothers would be notified of the amount approved and be provided with a list of lien releases and documents it was required to provide to Thompson Pacific for payment. The evidence established that the schedule of values applied by Thompson Pacific was formulated and submitted to the District before Martin Brothers's schedule was received by it.

Martin Brothers substantially finished its work in the later months of 2003. It concluded its punch list work in February 2004. The last progress payment was made to Martin Brothers on March 15, 2004. At that time, however, Martin Brothers still had a number of disputed claims for additional payment. The parties worked to resolve these claims.

Over this period, Martin Brothers's claims for additional payment varied significantly in amount and included unspecified claims for statutory penalties and interest. On March 22, 2004, Martin Brothers submitted a pay request application for extra work and change orders in the amount of $398,564.60 plus retention. Later in March 2004, its request was reduced to $356,586.20 plus retention. Thereafter, there was a series of communications relating to documentation for Martin Brothers's claims. In June 2004, Martin Brothers executed a stop notice claiming it was owed $427,326.03, apparently including retention. The stop notice resulted in the District's withholding from

Thompson Pacific's payment 125 percent of the amount included in the stop notice.

In July 2004, Thompson Pacific's proposal to resolve the disputes ended with rejection by Martin Brothers in August 2004.

Thompson Pacific then obtained a stop notice release bond that was filed with the District, resulting in the District's release of the monies being held pursuant to the stop notice. Thompson Pacific was paid these monies at the end of August 2004.

In October and November 2004, Thompson Pacific asked for and received a breakdown of Martin Brothers's claims. At the end of November, through its attorney, Martin Brothers provided a breakdown claiming $394,193.26.

On December 27, 2004, Martin Brothers filed the initial complaint in this case seeking $938,183.40 in damages, interest, penalties, and attorney fees. On December 28, 2004, Martin Brothers submitted a revised claim to Thompson Pacific for $737,223.27 plus retention.

The parties met in early January 2005 and agreed to a final payment amount subject to verification of amounts by Thompson Pacific and subject to approval by a person designated by Martin Brothers. At the beginning of March 2005, after another demand for payment by Martin Brothers, Thompson Pacific offered a reduced amount of $632,792.36 to Martin Brothers along with a letter specifying the releases and documents needed to process the final payment.

After some further correspondence, it was agreed Martin Brothers would accept Thompson Pacific's figure—$632,792.36, in satisfaction of all claims and would provide the requested documentation by overnight mail. In return, Thompson Pacific would pay the agreed amount the day after receipt of the required documentation.

On March 8, 2005, Martin Brothers sent several of the required documents, including a conditional final release, to Thompson Pacific by overnight mail. However, Martin Brothers did not provide the requested release of its stop notice and bond claim. Instead, Martin Brothers included a memorandum in the transmittal that stated: "Attached please find the conditional [release] upon final payment and all signed change orders. [¶] Regarding the stop notice and bond claim, we can release this as soon as we receive a cashier's check for the $632,792.36 or the check you provide clears the bank. [¶] If

you provide a cashier's check we can exchange the check for the stop Notice and bond claim release at the same time."

Thompson Pacific received Martin Brothers's transmittal on March 9, 2005, and was agreeable to either of the exchange proposals. However, that day at 4:45 p.m., Martin Brothers's attorney sent a letter demanding immediate verification that full payment was in the mail and demanding return of the conditional final release and disputed change order if verification was not given by noon on March 10, 2005. There was no evidence the attorney's letter was seen by anyone at Thompson Pacific with authority to comply with these demands before the deadline. On March 11, 2005, Martin Brothers filed a first amended complaint seeking damages in the amount of $635,292.36, plus penalties, interest and attorney fees.

After further communications attempting to compromise the matter failed, Thompson Pacific paid the sum of $632,792.36 (the amount it offered in March 2005 which Martin Brothers had agreed to at one point in the negotiations) in three installments in 2005. Martin Brothers received and accepted the checks without objection.

At trial, Martin Brothers sought only statutory late payment penalties, interest and attorney fees. The trial court denied the requested relief and entered judgment for defendants.

## DISCUSSION

"California has a series of so-called 'prompt payment' statutes that require general contractors to pay their subcontractors within specified, short time periods, and that impose monetary penalties for violations. Business and Professions Code section 7108.5 and Public Contract Code section 7107 are two of those statutes." (*Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 800 [21 Cal.Rptr.3d 751].) Martin Brothers made claims under both of these statutes and challenges on appeal the trial court's conclusion that they were not violated. We consider them in turn.

### I.

### Public Contract Code Section 7107—Retention Payments

Public Contract Code section 7107 (section 7107) is applicable to contracts for the construction of any public work of improvement and governs the payment of retention proceeds by the public entity owner and by the general contractor. (§ 7107, subds. (a), (b).) The statute requires the public entity to pay retentions to its general contractor within 60 days after the date

of completion. (§ 7107, subd. (c).) The statute requires the general contractor to then pay its subcontractors their respective shares of the retention proceeds within seven days after receiving the proceeds from the public entity. (§ 7107, subd. (d).) If the general contractor fails to pay the retention on time, the subcontractor may recover a penalty in the amount of "2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due." (§ 7107, subd. (f).) In any action for the collection of funds wrongfully withheld, the prevailing party is entitled to attorney fees and costs. (*Ibid.*)

The obligation of a general contractor to pay its subcontractors within seven days is, however, expressly subject to an exception stated in subdivision (e) of section 7107. (§ 7107, subd. (d).)[2] Subdivision (e) provides: "The original contractor may withhold from a subcontractor its portion of the retention proceeds if a bona fide dispute exists between the subcontractor and the original contractor. The amount withheld from the retention payment shall not exceed 150 percent of the estimated value of the disputed amount." (Hereafter section 7107(e).) The trial court found this exception applicable in this case, excusing Thompson Pacific's failure to pay Martin Brothers when it received payment from the District in August 2004.[3] We agree and reject Martin Brothers's claims of error.

■ Section 7107 serves a "remedial purpose: to encourage general contractors to pay timely their subcontractors and to provide the subcontractor with a remedy in the event that the contractor violates the statute." (*Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 720 [104 Cal.Rptr.2d 815] (*Morton Engineering*); accord, *S&S Cummins Corp. v. West Bay Builders, Inc.* (2008) 159 Cal.App.4th 765, 777 [71 Cal.Rptr.3d 828] (*S&S Cummins*).)[4]

---

[2] Section 7107, subdivision (d), reads: "*Subject to subdivision (e)*, within seven days from the time that all or any portion of the retention proceeds are received by the original contractor, the original contractor shall pay each of its subcontractors from whom retention has been withheld, each subcontractor's share of the retention received. However, if a retention payment received by the original contractor is specifically designated for a particular subcontractor, payment of the retention shall be made to the designated subcontractor, if the payment is consistent with the terms of the subcontract." (Italics added.)

[3] The trial court accepted Thompson Pacific's calculation that the monetary disputes between the parties involved $499,340.49, entitling Thompson Pacific to withhold $749,340.49 (the trial court erroneously calculated 150 percent of $499,340.49 as $749,340.49; the correct figure should be $749,010.74), well in excess of the $632,796.36 the parties agreed was the amount due.

[4] In connection with its argument regarding legislative intent presented in its opening brief, Martin Brothers filed a motion requesting we judicially notice a number of documents it claimed were part of the legislative history for section 7107, as well as Civil Code section 3260. Thompson Pacific opposed the motion on both procedural and substantive grounds. We denied Martin Brothers's motion. In its reply brief, Martin Brothers continues to argue from

■ Arguing we must liberally construe section 7107 in light of this remedial purpose (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328]), Martin Brothers claims section 7107(e) cannot be applied to allow withholding of undisputed retentions. Actually, section 7107(e) specifically authorizes the withholding of "*150 percent* of the estimated value of the disputed amount." (Italics added.) By definition, 50 percent of the amount withheld will be proceeds that are undisputed.

Martin Brothers goes on, however, to contend the remedial purpose of the statute requires us to interpret section 7107(e) as allowing the withholding of retention proceeds only if there is an honest dispute[5] over the amount of retention proceeds owed. According to Martin Brothers, this might occur where the general contractor has a good faith belief that it does not owe the money to the subcontractor because it believes the subcontractor's work to be substandard, as in *Taylor v. Van-Catlin Construction, supra,* 130 Cal.App.4th at page 1069. It might occur where the general contractor has a good faith belief it does not owe the money because the subcontractor did not complete or completed improperly the work, as in *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 533 [66 Cal.Rptr.3d 175]. It might occur where both parties reasonably believe a provision of the contract means something different, as in *Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1240–1241 [108 Cal.Rptr.2d 213]. But the withholding of retention proceeds would not occur, according to Martin Brothers, when the dispute is over change order work. Martin Brothers argues section 7107(e) does not cover such disputes. We disagree.

■ " 'Our primary task in construing a statute is to determine the Legislature's intent. [Citation.] We first turn to the words themselves for the answer. [Citation.] When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it. [Citation.] We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent. [Citation.]' " (*S&S Cummins, supra,* 159 Cal.App.4th 765, 777–778, quoting *Morton Engineering, supra,* 87 Cal.App.4th at p. 716.)

the materials it requested we judicially notice, ignoring the fact that its motion was denied. Such argument is improper. We will not consider these materials.

[5] In considering analogous statutes, courts have interpreted "bona fide dispute" to mean "good faith dispute" (*Taylor v. Van-Catlin Construction* (2005) 130 Cal.App.4th 1061, 1069 [30 Cal.Rptr.3d 690] [Civ. Code, § 3260, subd. (e)]) and "good faith dispute" to mean " 'that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation' " (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1339 [35 Cal.Rptr.3d 496] [Bus. & Prof. Code, § 7108.5]).

■ Section 7107(e) allows a general contractor who has received retention proceeds from a public entity owner to withhold all or a portion of such retentions from a subcontractor "if a bona fide dispute exists" between them. The statute contains no language restricting the word "dispute" to any particular kind of dispute other than it must be "bona fide." The ordinary meaning of "dispute" is a "verbal controversy," a "debate," or "quarrel." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 362, col. 1.) A controversy, debate or quarrel, i.e., a dispute, does not change its character depending on its subject. The subject is immaterial to its nature as a dispute. Indeed, in the context of construction litigation, a dispute may arise between a general contractor and a subcontractor concerning any number of subjects, including, but not limited to, nonperformance, improper or substandard performance, the timing of performance, or additional performance of work. As the facts in this case amply demonstrate, the precise nature of the dispute may be difficult to characterize. For example, what may be additional performance in the eyes of a subcontractor may be performance of the terms of the contract or correction of inadequate performance in the eyes of the general contractor. There may be questions over double billing, excessive billing, or allocation of billing. Thus, the nature or subject of a dispute in construction litigation is open to many possibilities. There is simply nothing in the language of section 7107(e) that evinces a legislative intent to limit the types of honest dispute that will justify the withholding of retentions.

■ Martin Brothers points out that even " 'language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. [Citation.] [¶] . . . Statutory language which seems clear when considered in isolation may in fact be ambiguous or uncertain when considered in context. [Citation.]' " (*National Technical Systems v. Commercial Contractors, Inc.* (2001) 89 Cal.App.4th 1000, 1008 [108 Cal.Rptr.2d 67], quoting *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].)

Martin Brothers argues such a latent ambiguity exists in section 7107(e). Martin Brothers contends the term "bona fide dispute" must be restricted to issues of inadequate or incomplete work when the term is considered in the context of the next sentence of section 7107(e), which provides: "The amount withheld from the retention payment shall not exceed 150 percent of *the estimated value of the disputed amount.*" (Italics added.) Martin Brothers argues, "the term 'estimated value' has no place if the statute only means that the contractor can withhold 150% of the change order claim asserted by the subcontractor whether it is all in dispute or not." By use of the term

"estimated value," Martin Brothers asserts, "the Legislature signaled its intent to allow withholding in cases of breach of contract or failure of performance."

■ We disagree. The phrase "estimated value of the disputed amount" does not have meaning only in cases of breach of contract or failure of performance. It may also logically be applied to mean the general contractor's good faith estimate of the monetary value of the portion of a change order that is disputed and that would otherwise be paid out of the retention proceeds. The Legislature's use of the term does not signal the restriction of section 7107(e) to certain kinds of disputes.

Finally, Martin Brothers argues section 7107(e) must be interpreted to exclude disputes over change orders because the Legislature in Civil Code section 3262 recognized that payment of retention will take place while the parties are still contesting the value of the change order work on a contract. The argument goes as follows: Subdivision (d) of Civil Code section 3262 states that a waiver and release of construction lien rights "shall be null, void, and unenforceable unless it follows substantially the following forms . . . ." The subdivision then provides the text of four lien waivers: (1) a conditional waiver and release upon progress payment; (2) an unconditional waiver and release upon progress payment; (3) a conditional waiver and release upon final payment; and (4) an unconditional waiver and release upon final payment. (Civ. Code, § 3262, subd. (d)(1), (2), (3), (4).) Within the text of the form for a conditional waiver and release upon final payment, the language provides that the release covers the final payment "except for disputed claims for additional work in the amount of $___." (*Id.*, subd. (d)(3).) Within the text of the form for an unconditional waiver and release upon final payment, the language provides for the waiver and release of all liens and claims "except for disputed claims for extra work in the amount of $___." (*Id.*, subd. (d)(4).) Martin Brothers argues, "There would be little reason to include this language in the *mandatory* form for releases if the Legislature meant for the general contractor to withhold the undisputed retention until final agreement was reached on the 'disputed claims for additional work.'" Thus, according to Martin Brothers, the language in the statutory forms recognizes a general contractor has an obligation to release retentions before disputed claims on change orders are resolved. We disagree.

Martin Brothers's argument assumes the monetary amount of the additional work or extra work claims (plus 50 percent—§ 7107(e)), will always equal or exceed the amount of retention proceeds. In fact, the language in the statutory forms reasonably can be understood to preserve a subcontractor's right to disputed claims for additional or extra work in the event retention proceeds

are paid to the subcontractor because the amount of retention proceeds exceeds 150 percent of the estimated value of the disputed claims. The waiver and release language of Civil Code section 3262 reserving the subcontractor's disputed claims for additional work does not require an interpretation that section 7107(e) is inapplicable to change orders.

■ Although the general purpose of section 7107 is to encourage timely payment of subcontractors by general contractors and to provide the subcontractor with a remedy in the event of violation of the statute (*Morton Engineering, supra,* 87 Cal.App.4th at p. 720; *S&S Cummins, supra,* 159 Cal.App.4th at p. 777), the exception stated in section 7107(e) reflects the Legislature's balancing of the competing interests of the general contractor and subcontractor. (See *Tesco Controls, Inc. v. Monterey Mechanical Co., supra,* 124 Cal.App.4th 780, 797.) Allowing a general contractor to withhold retentions for honest disputes over additional work claimed as change orders allows a general contractor no more leverage against a subcontractor than it holds in the other situations that Martin Brothers recognizes as covered by section 7107(e). We do no violence to the legislative purpose by construing section 7107(e) in accordance with its plain meaning. We are unpersuaded that the other statutory language argued by Martin Brothers requires us to restrict its meaning.

■ To summarize: When we "scrutinize the actual words of the statute, giving them a plain and commonsense meaning" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]), we conclude the exception of section 7107(e) applies to any good faith dispute between a general contractor and subcontractor. The trial court did not err in applying section 7107(e) to excuse Thompson Pacific from paying Martin Brothers retention proceeds when it received payment from the District in August 2004. Thus, Martin Brothers is not entitled to penalties from Thompson Pacific for delayed payment of retention proceeds.

Given this conclusion, we need not reach Martin Brothers's claims of error in what it characterizes as the trial court's "alternative justification for its decision denying statutory penalties for late payment of the retention."

## II.

### Business and Professions Code Section 7108.5—Progress Payments

Business and Professions Code section 7108.5 (section 7108.5) provides, in relevant part, that "[a] prime contractor or subcontractor shall pay to any

subcontractor, not later than 10 days of receipt of each progress payment, *unless otherwise agreed to in writing,* the respective amounts allowed the contractor on account of the work performed by the subcontractors, to the extent of each subcontractor's interest therein." (Italics added.)

The trial court found Thompson Pacific and Martin Brothers had "otherwise agreed" to a different time of payment and had "opted out" of Business and Professions Code section 7108.5 by the provision in the subcontracts that stated: "Subcontractor agrees that payment is not due until Subcontractor has furnished all applicable administrative documentation required by the Contract Documents and the applicable releases pursuant to Civil Code section 3262."

Martin Brothers argues the trial court erred because the phrase "unless otherwise agreed to in writing" in section 7108.5 is intended to authorize the parties to adopt an alternate fixed payment schedule. It is not intended to allow them to waive the prompt payment provisions of section 7108.5 by contractually requiring conditional lien releases before payment. This is so, according to Martin Brothers, because interpreting such a contractual provision as a waiver would render section 7108.5 a nullity and make the protection offered subcontractors by section 7108.5 meaningless. Once again, we disagree.

If the Legislature had meant to permit a fixed payment schedule as the only alternative to section 7108.5, it would have said so. Instead, the language of the statute broadly allows a general contractor and subcontractor to "otherwise agree in writing." There is nothing in such language to suggest that only certain kinds of agreements are permissible. The plain meaning of the statute authorizes contractual variation from the statute's payment requirements. We repeat: " 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it. [Citation.] We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent. [Citation.]' " (*S&S Cummins Corp., supra,* 159 Cal.App.4th at p. 778.)

Nor are we persuaded that interpreting a contractual provision requiring conditional lien releases before payment as a waiver renders Business and Professions Code section 7108.5 a nullity. Martin Brothers's argument to that effect would require us to accept that every construction contract requires conditional releases pursuant to Civil Code section 3262 and that every contract that requires conditional releases has a "releases before payment" term. We have been provided no basis for reaching such a conclusion.

Martin Brothers goes on to argue the trial court's interpretation of the subcontracts as waiving Business and Professions Code section 7108.5 is not

required by the language of the subcontracts. Martin Brothers contends the subcontracts it entered into with Thompson Pacific do not "demonstrate intent to do anything other than follow the statutory guidelines for lien releases."

 When the interpretation of a contract does not turn upon the credibility of extrinsic evidence, as is the case here, interpretation is purely a judicial function to be exercised according to the generally accepted canons of interpretation. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389 [62 Cal.Rptr.3d 815].) Those principles are well settled. "[T]he mutual intention of the parties as it existed at the time ·of contracting" governs. (Civ. Code, § 1636; see *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46].) We ascertain that intention solely from the written contract, if possible, while also considering the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647; *Starlight Ridge South Homeowners Assn. v. Hunter-Bloor* (2009) 177 Cal.App.4th 440, 447 [99 Cal.Rptr.3d 20].) "Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 [79 Cal.Rptr.3d 721, 187 P.3d 424]; see Civ. Code, § 1644.)

Thompson Pacific and Martin Brothers agreed in their subcontracts "that payment is not due until Subcontractor has furnished all applicable administrative documentation required by the Contract Documents and the applicable releases pursuant to Civil Code section 3262." Contrary to the argument of Martin Brothers, this language plainly reflects an intent of the parties to do more than simply follow the statutory guidelines for lien releases in Civil Code section 3262. The subcontractor language is a clear agreement to alter the timing of payments from Thompson Pacific to Martin Brothers. The language of the subcontracts that provides for monthly progress payments of "95% of labor and materials which have been placed in final position and for which the right to payment has been properly documented pursuant to the terms of this agreement" is consistent with this expressed intent to alter the timing of progress payments. The trial court correctly interpreted the language as a waiver of the payment requirements of Business and Professions Code section 7108.5.

Martin Brothers complains interpreting the contractual language as a waiver gives Thompson Pacific "total control over whether and when it would make a progress payment to its subcontractors." We disagree. Nothing in the subcontracts prevented Martin Brothers from submitting a monthly bill to Thompson Pacific for the work it had completed, along with a corresponding conditional release and the other required documentation.

Martin Brothers complains that Thompson Pacific waited a period of time after receipt of a progress payment from the District—the length of which was entirely within Thompson Pacific's discretion—before informing Martin Brothers what documentation was required and how much it could apply for as a progress payment. According to Martin Brothers, "No matter how quickly Martin Brothers provided this information, the trial court ruled that Thompson Pacific had no obligation to make a progress payment to Martin Brothers according to any particular schedule." Martin Brothers argues this amounted to forcing it to provide a no-interest loan to Thompson Pacific, undercutting the Legislature's intent in the prompt payment statutes to protect subcontractors from abuse by general contractors.

Martin Brothers fails to provide citations in its opening brief to support the factual assertions in this claim, and cites to only a portion of the evidence in the record in the citations it provides in its reply brief.[6] Martin Brothers does not cite us to a place in the statement of decision where it claims the trial court ruled Thompson Pacific had no obligation to make progress payments according to any schedule and we have found no such ruling. The argument also overlooks the fact that if Martin Brothers felt Thompson Pacific was dragging its feet in notifying it of the amount approved for billing, Martin Brothers could have submitted a bill with the required documents and releases to force the issue. The gist of Martin Brothers's argument is that Thompson Pacific abused its position with respect to Martin Brothers, but this ignores the trial court's finding that "payments were routinely made promptly and within a reasonable time after receipt by Thompson Pacific of the required documentation." Moreover, since Business and Professions Code section 7108.5 authorizes parties to contractually agree to alter the timing of progress payments, the fact the parties did so here does not demonstrate a violation of the policy behind the statute.

The trial court correctly concluded Thompson Pacific did not violate Business and Professions Code section 7108.5. As there was no violation of the statute to trigger the statute's penalty provisions, we need not consider Martin Brothers's claim that the trial court's view of how the 2 percent per month penalty should be calculated is wrong.

---

[6] Even the portions cited to us are ambiguous as to whether Thompson Pacific had already been paid at the time it notified Martin Brothers of the amount it could bill and that should be put in the conditional release. The testimony from Thompson Pacific employees indicated Martin Brothers was notified of the amount it could bill after the "pencil draw" was approved, not after Thompson was paid by the District.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents. (Cal. Rules of Court, rule 8.278(a)(1).)

Sims, Acting P. J., and Raye, J., concurred.

On December 14, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 24, 2010, S179452. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.