Filed 12/3/15  United Riggers & Erectors v. Coast Iron & Steel Co. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| UNITED RIGGERS & ERECTORS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COAST IRON & STEEL CO. et al., <br><br> Defendants and Respondents. | B258860 <br><br> (Los Angeles County <br> Super. Ct. No. VC062679) <br><br> ORDER MODIFYING OPINION <br><br> [Change in the Judgment] |

THE COURT:

It is ordered that the opinion filed herein on November 23, 2015, be modified in the following manner:

On page 11, the following sentence is added to the end of the disposition:

Each party to bear its own costs on appeal.

This modification constitutes a change in the judgment.

NOT TO BE PUBLISHED.

_____
ROTHSCHILD, P. J.                    JOHNSON, J.                    LUI, J.

Filed 11/23/15  United Riggers & Erectors v. Coast Iron & Steel Co. CA2/1 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| UNITED RIGGERS & ERECTORS, INC., | B258860 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. VC062679) |
| COAST IRON & STEEL CO. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Thomas I. McKnew, Jr., Judge.  Reversed in part, affirmed in part.

Law Office of Dirk Bruinsma and Dirk Bruinsma for Plaintiff and Appellant.

Westrup & Associates, R. Duane Westrup and Ian Chuang for Defendants and Respondents.

_____

This case arises out of a payment dispute between a contractor, Coast Iron & Steel Co. (Coast), and its subcontractor, United Riggers & Erectors, Inc. (United). After the work on a project was finished, United sent a demand to Coast to pay for change orders and for damages that United claimed Coast caused by mismanaging the project. Coast refused to pay, and also delayed forwarding United's share of retention payments Coast had received from the owner of the project.

After a bench trial, the court found in favor of Coast. United appeals, contending that the trial court erred in finding that Coast was not liable for the extra payments, as well as for failing to assess penalties and attorney's fees against Coast for its delay in forwarding the retention payments.

### FACTS AND PROCEEDINGS BELOW

In October 2010, Universal City Studios LLLP (Universal) contracted with Coast to provide "miscellaneous metals" work in the construction of a new ride at Universal Studios Hollywood based on the "Transformers" movie series. United in turn signed a purchase order that served as a subcontracting agreement with Coast.

The subcontract initially called for United to be paid $722,742, but the general contract between Universal and Coast, which was referenced in the subcontracting agreement, created a process by which Coast could appeal to Universal for change orders to increase its compensation when unexpected expenses arose. United submitted change orders to Coast by means of the same process, and Universal approved change orders that increased United's compensation. Coast paid United for change orders totaling an additional $773,237.60 over the contract price. On a monthly basis, Universal paid Coast 90 percent of the amount provided under the contract and the approved change orders. Coast forwarded to United its share of the payments as it received them from Universal. In accordance with the terms of the contract, Universal retained the remaining 10 percent of all the payments as "retentions" pending final completion of the work. When work on the project was completed, Universal paid the 10 percent retentions to Coast. Coast owed

United $149,602.52[1] as its share of the retention payments. In March, 2012, approximately two weeks after the work had been completed, Coast sent an email to United stating, "[p]lease have [a United employee] forward your final [change order] log along with any outstanding [change order requests] so we can review and coordinate to make sure everything has been submitted for you." United responded by sending a letter demanding $274,158.40 as compensation for "the mis[]management and or delayed deliveries caused by Coast," along with $78,384 in outstanding change order requests. Coast replied with an email reading, "I will see you in court!!"

In January 2013, United filed suit against Coast, seeking $446,857.42 in damages, plus attorney's fees, interest, and costs. The suit claimed that Coast owed $149,602.52 in retention payments and $23,186.50 for unpaid change orders, as well as $274,068.40 in damages it attributed to missing parts, lack of communication by Coast, fabrication errors, delays in installation of steel, and lack of transportation access. In its third cause of action, United alleged that Coast had violated Civil Code section 8814 (section 8814) and Civil Code section 8818 (section 8818), which require that contractors pay subcontractors their share of retention payments no more than 10 days after receipt by the contractor. The remaining causes of action alleged breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and a claim on the contractor's bond against defendant Arch Insurance Company.

Three weeks after the case was filed, Coast paid approximately two-thirds of the withheld retention payment. Ten months later, Coast paid the remaining $42,887. Coast paid no interest along with its delayed payments. Nor did it pay any of the other damages United claimed in its lawsuit.

After a bench trial in May 2014, the trial court ruled in favor of the defendants, finding that United had failed to prove that Coast was responsible for the extra expenses United incurred, and that United had failed to follow the procedure specified in the contract when submitting its final change orders. The statement of decision, which Coast

---

[1] This figure was approximately 10 percent of the sum of the original contract price ($722,742) and the approved change orders ($773,237.60).

3

prepared and the trial court adopted, stated that "there was a good faith dispute between Coast and United . . . that entitled Coast to withhold the payment of retention."

Coast as the prevailing party moved for an award of attorney's fees pursuant to section 8818. The trial court granted Coast's motion in the amount of $150,000. The court also awarded Coast $5,289.05 in costs as the prevailing party. This appeal followed.

## DISCUSSION

On appeal, United argues that the trial court erred by ruling that Coast was entitled, because a good faith dispute existed between Coast and United, to withhold the retention payments. Likewise, United contends that, because it should have prevailed on the retention claim, the attorney's fees awarded to Coast must be reversed. United also contends that the court erred by ruling against it on its other claims.

We agree with United regarding its retention claim and attorney's fees, and accordingly we reverse that part of the trial court's judgment. Otherwise we affirm.

I.      *Retention Payments*

It is common in the construction industry for the owner of a project to pay contractors on a monthly basis for work as it is completed, but to retain a percentage of the amount owed as a guarantee of satisfactory performance. A series of "prompt payment" statutes govern the payment of retentions and other similar payments to contractors and subcontractors. (These statutes include Civ. Code, § 8800 et seq., Bus. & Prof. Code, § 7108.5, and Pub. Contract Code, § 7107, among others.) United's entitlement to prompt payment of the withheld retention turns on the interpretation of those statutes. Most relevant here is section 8814, which provides that, "[i]f a direct contractor has withheld a retention from one or more subcontractors, the direct contractor shall, within 10 days after receiving all or part of a retention payment, pay to each subcontractor from whom retention has been withheld that subcontractor's share of the payment." (*Id.*, subd. (a).) There is an exception to this requirement, however: "If a good faith dispute exists between the direct contractor and a subcontractor, the direct

4

contractor may withhold from the retention to the subcontractor an amount not in excess of 150 percent of the estimated value of the disputed amount." (*Id.*, subd. (c).)

At issue here is whether a contractor may withhold the retention when there is a dispute of any kind between the contractor and a subcontractor, or only when the dispute relates to the retention itself. If the provision applies to all disputes, then a contractor, acting in good faith, may retain the retention pending the resolution of the dispute even if the dispute relates to other matters. If, on the other hand, the provision limits the withholding of the retention to only those disputes related to the retention itself, then despite any other disputes, the contractor must forward the retention within 10 days. Failure to do so subjects the contractor to a monthly penalty of 2 percent of the unpaid amount and attorney's fees. (§ 8818.)

Coast did not claim below or here that a dispute relating to the retention existed. Rather, the dispute was about change orders and other claimed damages. Nonetheless, the trial court found that Coast was justified in withholding the retention because it had a "good faith dispute" with United.

At the time the trial court made its decision there was no case directly on point, nor is there one now. But at the time of the decision there was case law interpreting Public Contract Code section 7107 (section 7107), which functions identically to section 8814 with respect to contracts with public entities. Just as section 8814, subdivision (c), allows a contractor to withhold retention payments from a subcontractor in case of a good faith dispute, section 7107, subdivision (e) provides that "[t]he original contractor may withhold from a subcontractor its portion of the retention proceeds if a bona fide dispute exists between the subcontractor and the original contractor. The amount withheld from the retention payment shall not exceed 150 percent of the estimated value of the disputed amount."

When the trial court decided this case, the prevailing authority on section 7107 was *Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc.* (2009) 179 Cal.App.4th 1401 (*Martin Brothers*), which held that a contractor with a good faith dispute with a subcontractor could withhold the retention even if the dispute was not

5

about the retention. Since then a different court of appeal has taken the opposite view and held that withholding the retention is justified only if the dispute is about the retention itself. (*East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742 (*East West Bank*). We agree with *East West Bank.*

In *Martin Brothers*, a public school district contracted with the defendant to build a high school, and the defendant subcontracted with the plaintiff to do clearing, grading, and paving work. (*Martin Brothers*, *supra*, 179 Cal.App.4th at p. 1406.) Throughout the course of construction, the subcontractor did extra work above what was called for in the contract. (*Ibid.*) In some cases, change orders were approved to authorize the extra work, but in other cases, the contractor disputed the subcontractor's entitlement to extra payment. (*Ibid.*) The subcontractor eventually filed suit, seeking the withheld retention payments and compensation for unpaid extra work and change orders. (*Id.* at p. 1408.) The contractor ultimately paid virtually the full amount that the subcontractor demanded, but the subcontractor continued the suit in order to seek penalties and attorney's fees. (*Id.* at p. 1409.)

The *Martin Brothers* court affirmed the trial court's judgment denying the subcontractor relief. (*Martin Brothers*, *supra*, 179 Cal.App.4th at pp. 1417-1418.) The court rejected the subcontractor's argument that, because the statute was intended to protect subcontractors, contractors were entitled to withhold retention payments only if there was a dispute over the amount of retention owed. (*Id*. at p. 1411.) It concluded that the statute was not ambiguous: "The statute contains no language restricting the word 'dispute' to any particular kind of dispute other than it must be 'bona fide.'" (*Id*. at p. 1412.)

In reaching that conclusion, the court in *Martin Brothers* failed to pay sufficient heed to our Supreme Court's instruction that, when interpreting the plain meaning of a statute, "[w]e do not examine [its] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) As the *Martin Brothers* court

6

acknowledged, the remedial purpose of the prompt payment statutes is "'to encourage general contractors to pay timely their subcontractors and to provide the subcontractor with a remedy in the event that the contractor violates the statute.'" (*Martin Brothers*, *supra*, 179 Cal.App.4th at p. 1410, quoting *Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 720.) Yet its interpretation of "dispute" promoted the opposite result.

The *East West Bank* court found the proper balance between the broader remedial purpose of the prompt payment statutes and the right of contractors to insist on satisfactory performance from subcontractors prior to final payment. Like *Martin Brothers*, *supra*, *East West Bank* concerned the interpretation of section 7107.[2] In *East West Bank*, a school district contracted with a contractor to build a high school. (*East West Bank*, supra, 235 Cal.App.4th at p. 745.) The school district refused to pay for most of the contractor's change orders, to release retention payments, or to pay other damages upon completion of the project. (*Id*. at p. 746.) The contractor sued, and after a bench trial, the trial court found in favor of the contractor, awarding damages that included statutory penalties pursuant to section 7107. (*Id*. at p. 747.)

The *East West Bank* court affirmed the trial court's judgment, holding that because there was no dispute regarding the retention payments themselves, the district was required to pay the contractor within the time specified by statute, regardless of whether there was a bona fide dispute regarding duties not related to the retention amount. (*East West Bank*, *supra*, 235 Cal.App.4th at pp. 748-749.) The court reasoned that "[w]hen [a remedial statute's] meaning is doubtful, it will be construed to suppress the mischief at which it is directed." (*Id*. at p. 748.) According to the *East West Bank* court, "[s]ection 7107's purpose of ensuring the prompt release of retention funds would not be served if any dispute justified retaining the funds. There is no reason to allow a public entity to retain the funds once their purpose of providing security against

---

[2] Because this case involved a dispute between an owner and a direct contractor, the relevant provision was section 7107, subdivision (c), which requires public entities to pay retentions within 60 days unless there is a dispute.

mechanics liens and deficiencies in the contractor's performance has been served. Unless the dispute relates to one of those purposes, the public entity will not be protected from the statutory penalty." (*Id*. at pp. 748-749.)

The *East West Bank* court's interpretation allows primary contractors to withhold retention payments to protect themselves from substandard or inadequate work by subcontractors. The additional 50 percent of the 150 percent withholding provision allows some margin for error, so that general contractors are protected even if it turns out that the estimated amount is inadequate to correct for substandard work. At the same time, subcontractors receive prompt payment of money that they are undisputedly owed. In this case, Coast did not deny that it owed United the full $149,602.52 retention that it withheld. The only dispute was over whether United was also entitled to other payments it claimed. To excuse Coast in this case from paying United the retention payments would unduly increase the leverage of owners and primary contractors over smaller contractors and subcontractors by discouraging subcontractors from making legitimate claims for fear of delaying the retention payment.

We thus hold that, pursuant to section 8814, subdivision (c), a contractor is entitled to withhold a retention payment only when there is a good faith dispute regarding whether the subcontractor is entitled to the full amount of the retention payment. Accordingly, we reverse the judgment of the trial court as to this issue. On remand, the trial court is directed, pursuant to section 8818, to award United penalties and, as discussed below, attorney's fees for the delayed retention payment claim.

II.    *Attorney's Fees*

The trial court granted Coast $150,000 in attorney's fees as the prevailing party in the litigation. Section 8818 provides that "[i]f an owner or direct contractor does not make a retention payment within the time required by this article . . . (b) [i]n an action for collection of the amount wrongfully withheld, the prevailing party is entitled to costs and

8

reasonable attorney's fees."[3]  Because we have reversed the trial court's judgment in favor of Coast under this section, it is not the prevailing party with respect to the retention payments.  The trial court's judgment relating to attorney's fees is therefore reversed.  The court on remand shall determine and award attorney's fees to United, including attorney's fees for this appeal as it relates to the retention claim.

III.    *Breach of Contract Claims*

In addition to its claim for unpaid retentions, United also sought $297,254.90 in damages for breach of contract, including for unpaid change orders and for additional costs that United claimed Coast caused it to incur. The trial court ruled in favor of Coast on these claims, finding that United had not followed the contractual procedure for seeking additional compensation, and that, in any case, United had not proved its damages.  United challenges the court's decision, contending that the court erred in its ruling on the contractual requirements, and that this error tainted the court's conclusion on damages.  We disagree and affirm the trial court as to these issues.

The contract between Universal and Coast created a method by which Coast could claim additional compensation beyond the amount the original contract called for.  Coast

---

**3**        In addition to awarding Coast attorney's fees under section 8818, the trial court stated that Coast was entitled to attorney's fees pursuant to section 7107, subdivision (f), and Business and Professions Code section 7108.5 (section 7108.5), subdivision (c).  Neither provision applies to this case.  Section 7107 applies to the construction of public works, not private construction contracts like those at issue here.  Section 7108.5 governs progress payments on ongoing work, not the repayment of retention payments.  At oral argument, Coast contended that even if we were to reverse the trial court's decision with respect to retention payments, Coast would still be entitled to attorney's fees because it prevailed with respect to United's contract claims, and United cited section 7108.5 in its complaint in support of those contract claims.  In fact, both Coast and United consistently and mistakenly believed throughout the course of this case that section 7108.5 governed retention payments.  As late as its brief on appeal, Coast wrote that "[t]he attorney fee provisions of section 7108.5 [subdivision] (c) warn contractors and subcontractors not to assert meritless retention claims."  The subject that section 7108.5 covers, the timely payment of *progress* payments, was simply not part of this case, and United's contract claims cannot be understood as allegations of withheld progress payments.  Coast may not recover attorney's fees under section 7108.5, subdivision (c) simply because United cited that section in its complaint.

9

was required to "give Universal written notice of any claim [for increased payment] not later than three (3) days after the occurrence of the event giving rise to the claim, but (except in the event of emergencies) prior to the incurring of any expenses by [Coast]. [Coast] expressly waives its right to an increase in the Contract Sum unless it complies with the notice provisions of this paragraph." Coast issued a purchase order to United that constituted the subcontract between the parties. That purchase order stated that "[a]ll work is to be performed in accordance with the General Contract and the Contract Documents referred to in the General Contract . . . . [¶] [United] agrees to be bound to Coast Iron & Steel Co. as Coast Iron & Steel Co. is bound to [Universal]."

United contends that it was not bound to follow the terms of the general contract regarding additional costs because "the subcontract was not the same as the prime contract; it merely incorporated provisions of the prime contract for the purposes of effectuating the subcontract." United further argues that the parties did not follow the timing provisions of the contract, and that industry standards did not require strict compliance with these timelines but allowed for United to wait as long as a month after work was completed to submit change orders.

We need not reach the merits of United's claims because United has failed to show that the trial court erred in its determination that United failed to prove damages. On appeal, United challenges the trial court's ruling on damages in only one respect: It contends that the court's misinterpretation of the parties' responsibilities in submitting change orders "tainted its application of the modified total cost theory." Nothing in the record supports such a conclusion. The court found that United failed to meet the requirements of the modified total cost theory on several bases independent of the change order requirements of the contract.

Under this method, damages are the amount of the total cost of performance reduced by the amount required to be paid under the contract. (*Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 243.) To prevail on this damage theory, a plaintiff must demonstrate the following: "(1) the impracticality of proving actual losses directly; (2) the plaintiff's bid was reasonable; (3) its actual costs were reasonable; and

10

(4) it was not responsible for the added costs." (*Ibid.*) "If some of the [sub]contractor's costs were unreasonable or caused by its own errors or omissions, then those costs are subtracted from the damages to arrive at a modified total cost." (*Dillingham-Ray Wilson v. City of Los Angeles* (2010) 182 Cal.App.4th 1396, 1408.) The court found that United failed to meet the requirements of the modified total cost theory on several bases independent of the change order requirements of the contract: (1) United failed to demonstrate how the absence of Coast's representative on the work site caused damages; (2) The lack of necessary parts did not add to United's costs because United was always able to shift to other available work while waiting for parts to arrive; and (3) United's expert failed to demonstrate that Coast was responsible for delays. These findings preclude recovery under any theory of damages.

## DISPOSITION

The judgment of the court is reversed with respect to retention payments and attorney's fees. The case is remanded to the trial court for further proceedings to determine penalties and attorney's fees to which United is entitled, including fees for this appeal. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

JOHNSON, J.

LUI, J.

11