Filed 1/27/15

<span style="text-align:center">**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup></span>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FTR INTERNATIONAL, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RIO SCHOOL DISTRICT, <br><br> Defendant and Appellant; <br><br> EAST WEST BANK, <br><br> Intervener and Respondent. | 2d Civil No. B238618 <br> (Super. Ct. Nos. CIV201015, 01CC05901, <br> 01HL05281, 204779, 205936, 207742, <br> 207744, 207994, 208016, 223403) <br> (Ventura County) |

Public Contract Code section 7107 (section 7107) allows a public entity to withhold funds due a contractor when there are liens on the property or a good faith dispute concerning whether the work was properly performed. Here we conclude that a dispute over the contract price does not entitle a public entity to withhold funds due a contractor.

We disagree with *Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc.* (2009) 179 Cal.App.4th 1401 (*Martin Brothers*), which holds otherwise. We also conclude the doctrine of unclean hands does not apply to section 7107.

---

<sup>*</sup> Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

This case arises from a contract for the construction of a school. After the school was completed, the school district and its general contractor engaged in a decade-long legal battle. The result was a judgment for the contractor FTR International, Inc. (FTR) against the Rio School District (District) exceeding $9 million. District appeals.

We conclude: the trial court properly assessed penalties against District because it did not timely release retained funds required by section 7107; [[the trial court properly rejected District's action under the False Claims Act (FCA) Government Code[1] section 12650 et seq.; the trial court properly assessed prejudgment interest, subject to adjustment for any extra work claims found untimely on remand.]]

We also conclude: [[the trial court erred in its interpretation of a contract provision imposing time limitations to submit the contractor's claims for extra work as requiring a showing of prejudice; and]] the trial court erred in awarding fees for work not solely related to FTR's cause of action pursuant to section 7107.

We reverse and remand with instructions in the instances where the trial court erred and affirm in all other respects.

FACTS

FTR has constructed buildings for public entities, including schools, courthouses and libraries for 15 years. In 1999, FTR submitted the winning bid in the amount of $7.345 million to construct a school for District.

During construction, FTR submitted approximately 150 proposed change orders (PCO). FTR claimed some of the PCOs were necessary because the plans provided by District were inadequate or misleading. District denied most of the PCOs on the grounds that the work was covered under the basic contract, the amounts claimed were excessive or that a PCO was not timely under the contract. The construction was completed in June 2001. District filed a notice of completion on August 7, 2001. The school has been occupied since May 2001.

_____

[1] All statutory references are to the Government Code unless stated otherwise.

2

Pursuant to the contract, District retained 10 percent of each progress payment. At the completion of the work, District held a reserve of $676,436.49. That amount, however, was subject to stop notices filed by FTR's subcontractors. The last of the stop notices was released on September 28, 2004.

District refused to pay the balance due under the contract, refused to pay any but a small portion of the amounts claimed by FTR in its PCOs, refused to release any of the retention and refused to compensate FTR for damages allegedly caused by delay and disruption. FTR sued District to recover damages for breach of contract, statutory penalties under section 7107[2], attorney fees, interest and costs. District filed a

_____

[2] Section 7107 states: "a) This section is applicable with respect to all contracts entered into on or after January 1, 1993, relating to the construction of any public work of improvement. [¶] (b) The retention proceeds withheld from any payment by the public entity from the original contractor, or by the original contractor from any subcontractor, shall be subject to this section. [¶] (c) Within 60 days after the date of completion of the work of improvement, the retention withheld by the public entity shall be released. In the event of a dispute between the public entity and the original contractor, the public entity may withhold from the final payment an amount not to exceed 150 percent of the disputed amount. For purposes of this subdivision, 'completion' means any of the following: [¶] (1) The occupation, beneficial use, and enjoyment of a work of improvement, excluding any operation only for testing, startup, or commissioning, by the public agency, or its agent, accompanied by cessation of labor on the work of improvement. [¶] (2) The acceptance by the public agency, or its agent, of the work of improvement. [¶] (3) After the commencement of a work of improvement, a cessation of labor on the work of improvement for a continuous period of 100 days or more, due to factors beyond the control of the contractor. [¶] (4) After the commencement of a work of improvement, a cessation of labor on the work of improvement for a continuous period of 30 days or more, if the public agency files for record a notice of cessation or a notice of completion. [¶] (d) Subject to subdivision (e), within seven days from the time that all or any portion of the retention proceeds are received by the original contractor, the original contractor shall pay each of its subcontractors from whom retention has been withheld, each subcontractor's share of the retention received. However, if a retention payment received by the original contractor is specifically designated for a particular subcontractor, payment of the retention shall be made to the designated subcontractor, if the payment is consistent with the terms of the subcontract. [¶] (e) The original contractor may withhold from a subcontractor its portion of the retention proceeds if a bona fide dispute exists between the subcontractor and the original contractor. The amount withheld from the retention payment shall not exceed 150 percent of the

3

separate action seeking damages for 416 alleged violations of the FCA (§ 12650 et seq.).
[[FTR cross-complained in that action alleging District violated the Federal Civil Rights Act (42 U.S.C.A. § 1981).  All the actions were consolidated by the trial court.]]

After a 243-day court trial, the trial court found in favor of FTR.  It awarded $9,356,124.81 to FTR, which includes damages for the balance due under the contract, extra work performed by FTR, delay and disruption caused by District, statutory penalties pursuant to section 7107, attorney fees, prejudgment interest and costs.[3]

DISCUSSION

*Section 7107 Penalties*

District contends the trial court erred in awarding penalties under section 7107.  Subdivision (c) of this section provides, in part:  "Within 60 days after the date of completion of the work of improvement, the retention withheld by the public entity shall be released.  In the event of a dispute between the public entity and the original

---

estimated value of the disputed amount.  [¶]  (f) In the event that retention payments are not made within the time periods required by this section, the public entity or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due.  Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to attorney's fees and costs.  [¶]  (g) If a state agency retains an amount greater than 125 percent of the estimated value of the work yet to be completed pursuant to Section 10261, the state agency shall distribute undisputed retention proceeds in accordance with subdivision (c).  However, notwithstanding subdivision (c), if a state agency retains an amount equal to or less than 125 percent of the estimated value of the work yet to be completed, the state agency shall have 90 days in which to release undisputed retentions.  [¶]  (h) Any attempted waiver of the provisions of this section shall be void as against the public policy of this state."

[3] East West Bank (Bank) held a security agreement covering virtually all of FTR's personal property, including the judgment.  Bank foreclosed and claims to have purchased the judgment at the foreclosure sale.  FTR disputes the validity of the sale, but concedes the Bank has some interest in the judgment.  The validity of the sale has not been adjudicated.  The Bank moved to substitute as the real party in interest for FTR.  We denied the motion.  Instead, we granted the Bank leave to file a brief as an intervener.  The Bank filed a joint respondents' brief with FTR.  We continue to refer to respondent as FTR.  To the extent applicable, reference to FTR also includes the Bank.

4

contractor, the public entity may withhold from the final payment an amount not to exceed 150 percent of the disputed amount."

Subdivision (f) of section 7107 provides in lieu of interest, a penalty of two percent per month on any amount improperly withheld plus attorney fees and costs.

Here the trial court found the project was completed on August 7, 2001. The retention was required to be released within 60 days, on October 5, 2001. Stop notices however, prohibited District from releasing the funds on that date. The stop notices have since been released, but District has refused to release any funds. District still had the entire retention amount of $676,436 at the time of the statement of decision, over 10 years after the project was completed. The court found District had no justification for retaining the funds after the stop notices were released. It assessed a 2 percent per month penalty from the date the stop notices were released for a total penalty of $1,537,404.96.

District argues it was entitled to withhold all the retention because there was a good faith dispute between FTR and District. The dispute was FTR's claim that District wrongfully denied all but a few of its 150 PCOs. In other words, the dispute was over how much, if any, District owed FTR.

The purpose of a retention is to provide security against potential mechanics liens and to insure the contractor will complete the work properly and repair defects. (*Yassin v. Solis* (2010) 184 Cal.App.4th 524, 534.) The retained funds must be paid to the contractor when the security is no longer required. (*Ibid.*)

Here, after the stop notices were cleared, District points to nothing for which security was required. The dispute on which District relies, FTR's claim against District, does not require District to retain FTR's funds as security. But District argues there is no language in section 7107 limiting the term "dispute" to disputes relating to the legitimate purposes for the retention.

District relies on *Martin Brothers*, *supra*, 179 Cal.App.4th 1401, decided after the evidence in this case was heard. In *Martin Brothers*, a general contractor on a

5

public school project retained a portion of the progress payments due a subcontractor. After the subcontractor completed its work, the subcontractor claimed additional money was owed it due to change orders. The subcontractor sought a two percent per month penalty against the contractor pursuant to section 7107, subdivision (f) for failure to release funds to the subcontractor within seven days of the release of funds on the general contract, as required by subdivision (d). Subdivision (e) provides for an exception "if a bona fide dispute exists between the subcontractor and the original contractor." In holding the subcontractor was not entitled to the penalty, the Court of Appeal concluded the exception of section 7107, subdivision (e) "applies to any good faith dispute between a general contractor and subcontractor." (*Martin Brothers*, *supra*, at p. 1414.)

We decline to follow *Martin Brothers*. The purpose of section 7107 is to deter public entities from improperly withholding retention payments. (*FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 804-805.) The statute is remedial. (*S & S Cummins Corp. v. West Bay Builders, Inc.* (2008) 159 Cal.App.4th 765, 777.) A remedial statute must be liberally construed to promote its purpose. (*Booth v. Robinson* (1983) 147 Cal.App.3d 371, 378.) Relief will be granted unless clearly forbidden. (*Ibid.*) When its meaning is doubtful, it will be construed to suppress the mischief at which it is directed. (*Ibid.*) We may not construe the words of section 7107 beyond their plain meaning.

Section 7107's purpose of ensuring the prompt release of retention funds would not be served if any dispute justified retaining the funds. There is no reason to allow a public entity to retain the funds once their purpose of providing security against mechanics liens and deficiencies in the contractor's performance has been served. Unless the dispute relates to one of those purposes, the public entity will not be protected from the statutory penalty. FTR's action against District is not such a dispute.

District points to a recodification of Civil Code section 3260, subdivision (c) into Civil Code section 8812, subdivision (c). (Stats. 2010, ch. 697, § 20, Sen. Bill No. 189.) The sections govern retentions in construction contracts for private works, and

6

are similar to section 7107, subdivision (c).  Civil Code section 3260 originally provided, in part:  "In the event of a dispute between the owner and the original contractor, the owner may withhold from the final payment an amount not to exceed 150 percent of the disputed amount."  When the section was recodified into Civil Code section 8812, subdivision (c) was amended to read:  "If there is a *good faith* dispute between the owner and direct contractor *as to a retention payment due*, the owner may withhold from final payment an amount not in excess of 150 percent of the disputed amount."  (Italics added.) District points out that the Legislature did not similarly amend section 7107, subdivision (c) to add "as to a retention payment due."  District claims this shows *Martin Brothers* was properly decided; that is, any good faith dispute is sufficient to allow withholding of 150 percent of the disputed amount.

But the Law Revision Commission Comments to Civil Code section 8812 state that the section is recodified without substantive changes.  In addition, Senate Bill No. 189, under which Civil Code section 8812 was recodified, expressly states that, with exceptions not relevant here, the act is intended to be nonsubstantive.[4]  It is noteworthy the Legislature also added the requirement that the dispute be in "good faith" to Civil Code section 8812, subdivision (c).  The Legislature did not amend section 7107, subdivision (c) to add the term "good faith."  No one would seriously argue section 7107, subdivision (c) allows a public entity to create a dispute in bad faith.

District argues that because it properly withheld the retention funds under stop notices past the 60-day statutory period, it has complied with the statute and cannot be penalized.  But the purpose of section 7107 is to deter a public entity from unreasonably withholding retention funds.  The purpose of the statute would not be served by interpreting it as District suggests.  Once the legitimate purpose for retaining the funds end, the public entity must release the funds or suffer the statutory penalty.

---

[4] We grant FTR's request for judicial notice of Civil Code section 8812's legislative history.

7

District may not hold these funds hostage because it disputes amounts owed under the contract that includes numerous change orders.

[[We need not consider the trial court's alternative theory of District's liability.

*Contract Provisions*

District contends the trial court refused to enforce material provisions of the contract in awarding damages to FTR. The damage award arises from claims for extra work in the PCOs and disruption and delays caused by District. Its contention is based on two contract clauses that require FTR to present claims within specific time limits.

Article 10 of the contract entitled "Claims for damages" provides: "If CONTRACTOR claims compensation for any damage allegedly sustained by reason of an act of DISTRICT or its agents, the Contractor shall, within five . . . calendar days after sustaining the damage, submit to District's Director of School Facilities & Classified Services a written statement of the damage sustained. On or before the 15th day of the month after the month in which the damage was sustained, CONTRACTOR shall file, with District's Director of School Facilities & Classified Services, an itemized statement indicating the factual basis in support of his claim and the amount of damage. If CONTRACTOR fails to comply with the provisions of this Article concerning the submission of a statement, the claim(s) for compensation shall be forfeited and invalidated and shall not be entitled to consideration for payment on account of any damage."

Article 37D provides: "If CONTRACTOR should claim that any instruction, request, drawing, specification, action, condition, omission, default or other situation obligates DISTRICT to pay additional compensation to CONTRACTOR or to grant an extension of time for the completion of this contract, or constitutes a waiver of any provision of this contract, the CONTRACTOR shall notify the DISTRICT, in writing, of his claim within ten . . . calendar days from the date he has actual or constructive notice of the factual basis supporting the claim. The CONTRACTOR'S

8

failure to notify DISTRICT within the ten . . . calendar day period shall be deemed a waiver and relinquishment of the claim against DISTRICT. If the notice is given within the specified time, the procedure for its consideration shall be as stated above in this article."

District asserts it is undisputed that none of the claims for which the trial court awarded damages were submitted within the time limits provided in Article 10 or 37D. But the trial court found: "In many cases the District conceded that adequate notice had been received."

The trial court also found that some of FTR's claims arose from District's breach of contract in not providing adequate plans and specifications. It determined that the time limitations of Articles 10 and 37D did not apply to claims arising from District's alleged breach of contract. (*D.A. Parrish & Sons v. County Sanitation Dist., etc.* (1959) 174 Cal.App.2d 406, 414.) District does not quarrel with the trial court's ruling as to those claims. But the parties agree only four of FTR's claims arose from District's alleged breach of contract.

As to the other claims, the trial court interpreted the forfeiture provisions of Articles 10 and 37D to apply only where prejudice to District results from failure to make a timely claim. The trial court's reasoning for such an interpretation is that the law abhors a forfeiture; the forfeiture clauses are so one-sided as to be unconscionable; and the contract is one of adhesion.

The problem with the trial court's reasoning is that the contract clauses are authorized by statute. Section 930.2 provides, in part: "The governing body of a local public entity may include in any written agreement to which the entity, its governing body, or any board or employee thereof in an official capacity is a party, provisions governing the presentation, by or on behalf of any party thereto, of any or all claims arising out of or related to the agreement and the consideration and payment of such claims." Section 930.4 provides: "A claims procedure established by agreement made pursuant to Section 930 or Section 930.2 exclusively governs the claims to which it

9

relates, except that if the procedure so prescribed requires a claim to be presented within a period of less than one year after the accrual of the cause of action and such claim is not presented within the required time, an application may be made to the public entity for leave to present such claim. Subdivision (b) of Section 911.4, Sections 911.6 to 912.2, inclusive, and Section 946.6 are applicable to all such claims, and the time specified in the agreement shall be deemed the 'time specified in Section 911.2' within the meaning of Sections 911.6 and 946.6."

Nothing in the statutes requires District to show prejudice. To the contrary, section 930.4 provides: "[I]f . . . such claim is not presented within the required time, an application may be made to the public entity for leave to present such claim." The application for leave is treated in the same manner as an application for leave to file a late tort claim against a public entity. (§§ 911.4, subd. (b); 911.6; 912.2.) FTR does not contend it filed any such application.

A question arises whether Articles 10 or 37D applies to FTR's extra work claims. Article 10 requires claims to be submitted within five calendar days, and 37D requires acclaims to be submitted within ten calendar days. Both are worded broadly enough to cover any claim that might arise from the contract. But Article 10 refers to claims for "any damage"; whereas Article 37D refers to claims "to pay additional compensation to CONTRACTOR." Because Article 37D is specific to claims for extra work by the contractor, it controls. (Code Civ. Proc., § 1859.) Moreover, the trial court found the parties' course of conduct showed District did not consider Article 10 to apply to extra work claims. The acts of the parties under contract are a reliable means of showing what they intended. (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 753-754.) We agree with the trial court that Article 37D applies to FTR's claims for extra work.

District argues the trial court erred in finding FTR was not required to submit invoices and checks along with its claims for extra work. Instead, the trial court

10

found:  "There is nothing in Article 37 that obligated FTR to submit a demand for payment in any particular amount coupled with supporting backup information."

Unlike Article 10, Article 37D does not require FTR to file with District "an itemized statement indicating the factual basis in support of his claim and the amount of damage."  Nor does Article 37D mention invoices and checks.

Instead, District relies on contract section 01035, paragraph 1.6.  But paragraph 1.6 must be read together with paragraph 1.5.  They state:

"l.5 CONSTRUCTION CHANGE DIRECTIVE  [¶]  A.  When the Owner and Contractor are not in agreement on terms of a Change Order Proposal Request, the Architect may issue a Construction Change Directive instructing the Contractor to proceed with a change, for subsequent inclusion in a Change Order.  [¶]  1.  Construction Change Directive will contain a complete description of the change and designate method to be followed to determine change in the Contract Sum or Time."

"1.6  DOCUMENTATION  [¶]  A.  Maintain detailed records on a time and material basis of work required by the Construction Change Directive.  [¶]  1.  After completion of the change submit an itemized account and supporting date necessary to substantiate cost and time adjustment to the contract."

When read in context, it is clear the documentation required in paragraph 1.6 applies only to a "Constructive Change Directive," that is, a directive issued by the architect.  It does not apply to the PCOs initiated by FTR that did not result in a Construction Change Directive.  District's briefs omit to note this obvious point.  District points to no claim on a Construction Change Directive that was not properly documented.  In fact, District makes no attempt whatsoever to distinguish the few PCO's that resulted in an architect's change directive for the vast majority of PCOs that did not.

District also relies on Article 37C of the contract, which states:  "The value of any extra work, change, or deduction shall be determined, at the discretion of the DISTRICT, in one or more of the following ways:  [¶]  1.  By acceptable lump sum proposal from CONTRACTOR.  [¶]  2.  By unit price contained in CONTRACTOR'S

11

original bid and incorporated in the contract documents or fixed by subsequent agreement between the DISTRICT and CONTRACTOR. [¶] 3. By cost of material and labor and percentage for overhead and profit."

Article 37D requires FTR to submit a claim within 10 days of obtaining notice of the basis for the claim. Nothing in Article 37C requires FTR to support its claim with invoices and checks within that period.

Here the trial court found that because of FTR's internal record keeping system, it is not reasonably practical to separate checks and invoices relating to the school project from other FTR projects; and that in many instances only estimates could be used because the extra work was combined with base work. District cites no authority to show that the trial court abused its discretion in allowing FTR to use estimates to prove damages.

Concerning the PCOs requesting compensation for extra work, we conclude that Article 37D applies, but that the trial court erred in requiring a showing of prejudice in applying the time limitations in the article. We also conclude the trial court did not abuse its discretion in allowing FTR to use estimates in proving damages for extra work.

FTR's claims for delay and disruption damages are a different matter. District's opening brief asserts only that the trial court's decision applying Article 37D to claims for extra work, does not explain why Article 10 does not apply to claims for delay and disruption. But the trial court's statement of decision gives reasons why Article 10 does not apply to such damages. The trial court found: "[I]t was not possible for FTR to comply with all the requirements of Article 10 during the project, particularly the provision that requires that an itemized statement and an amount of damages be provided by the fifteenth day of the following month, as FTR would not have been able to determine at that point in time what its damages were. There was unrebutted and unrefuted testimony that Mr. Godoy, District's Director of Facilities, acknowledged in a meeting in March of 2000, that certain damages, such as impact damages, could not be determined until after the project was over. Mr. Seibold, District's expert, conceded this

12

point. [¶] In addition, the District made it impossible for FTR to comply with Article 10 in another way. The evidence showed that District's designated representative affirmatively prevented FTR from complying with the requirements of Article 10. The express terms of Article 10 require that the information be presented directly to District's Director of School Facilities & Classified Services (Mr. Godoy). When FTR delivered documents or other information directly to Mr. Godoy's office during the project, he instructed FTR not to deliver things to his office."

The trial court also found: "FTR did give the District notice that the actions of the District in refusing to give various time extensions were causing FTR to incur additional costs in completing the project. One of the instances where the District was placed on notice was when Mr. Katbi [FTR's President] appeared at a board meeting in June of 2000 and told the trustees that FTR was incurring significant damages because of the District's refusal to grant time extensions. There were a number of other instances of notice from FTR to the District, including letters that were sent at various times in which FTR notified the District of the problems that it was experiencing and the potential claim for disruption. One such notice was a letter that was sent almost the very first day of the project, but there were other letters during the project, in addition to the updates that were provided on a monthly basis."

Finally, the trial court found: "FTR's disruption claim is based upon the District's breach of contract by failing to grant extensions of time for performance. FTR gave notice to the District as required by Article 37. The District ignored all notices and requests for more time. Additional notice under Article 10 was not required. In addition, notice provisions do not apply where, as here, the defendant has breached the contract."

District does not challenge any of these findings. There is no basis for a reversal of the award of damages for disruption and delay.

<em>FCA Claims</em>

District contends the trial court erred in denying its action brought under the FCA. (§ 12650 et seq.) The action alleged that the PCOs submitted by FTR

13

constituted false claims. District points out that the trial court found 26 of the PCOs submitted by FTR were false.

Section 12651, subdivision (a)(1) provides that a contractor may not knowingly present or cause to be presented to an officer or employee of the state or any political subdivision a false claim for payment or approval. A "Claim" includes "any request or demand . . . for money." (§ 12650, subd. (b)(1).)

District concedes that the submission of a PCO does not standing alone constitute a claim under the FCA. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 742.) But District relies on a portion of a letter dated June 8, 2001, in which FTR states: "[W]e request that our (200) change orders be submitted as claims in accordance with the Contract."

FTR's letter, however, was in response to District's assertion that the PCOs were not timely under the contract. Read in context, FTR's letter is nothing more than a demand that the PCOs be considered properly submitted. It is not a demand for payment. Even District's expert testified District would not have perceived the letter as a formal claim. District presented no evidence that any representative of District perceived the letter as a demand for payment.

District argues that a PCO under which the contractor ultimately gets paid is a false claim under the FCA. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles*, *supra*, 152 Cal.App.4th at p. 742.) District claims the court awarded damages on several PCOs it found were false.

In several instances, the court found that the same PCO contained valid and invalid elements. In such cases, the court awarded damages based only on the valid elements and no damages on the invalid elements. Thus there was no payment on elements of the PCOs that could have constituted a false claim.

District argues that in each of the PCOs in which the court found both valid and invalid claims for damages "the court, without seeing the obvious contradiction, wrote about the evidence in support of the 'PCO-based claim damages,' it was awarding,

14

and then found that the same PCO was not a 'demand for payment.'"  But there is no contradiction.  The court's reference to "PCO-based claim damages" is simply a handy way of referring to the particular claim of damage alleged in the law suit.  The court was not finding that the PCO constituted a claim within the meaning of the FCA.  If District is suggesting that a contractor must make a demand for payment before bringing a law suit, it cites no supporting authority.[5]

*Prejudgment Interest*

District contends the trial court erred in its award of prejudgment interest.

Civil Code section 3287, subdivision (a) provides, in part:  "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . ."  Subdivision (b) of the section provides:  "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

*Liquidated*

Here the court calculated prejudgment interest under Civil Code section 3287, subdivision (a) on the amounts as follows:  $1,289,242.80 unpaid on the contract; less $676,436.49 retained on which two percent, per month was assessed in lieu of interest; less $183,415 in credits; for a total of $429,391.31.  The court calculated interest on $429,391.31 from August 7, 2001, the date of the notice of completion.  The total interest awarded under Civil Code section 3287, subdivision (a) was $434,579.89.

District argues the amount of damage was not liquidated because the court did not calculate the credits until after litigation was completed.  But District offered no

---

[5] District's motion for an extension of time to serve its opening brief on the Attorney General pursuant to section 12656 and to augment the record to show compliance with the section is denied as moot.

15

evidence to dispute the amount of the credits. In the sole example it relies on to show it disputed the amount of the credits, the trial court found: "The District introduced [a letter from the District's representative, Jason Johnson, discussing the parties' credit proposals] for non-hearsay purposes and, thus, not for the truth of any of its contents. The parties stipulated that the Court deem that Jason Johnson was recalled as a witness and testified that he had no intention to cheat FTR or anyone else when he prepared the letter. The District presented no other evidence to establish any amount of the credit other that [*sic*] the amount offered by FTR." District offered no evidence to challenge the amount of FTR's offer.

In any event, even if the amount of the credit remained unliquidated until after trial, it would not affect the award of prejudgment interest. Prejudgment interest is awarded on the balance of the claim after deduction of an unliquidated setoff. (*Bentz Plumbing & Heating v. Favaloro* (1982) 128 Cal.App.3d 145, 152.) That is what the trial court did here.

District argues a large discrepancy between the amount of damages demanded in the complaint and the size of the eventual award, militates against a finding of certainty mandated by Civil Code section 3287, subdivision (a). (Citing *Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 435.) Although a large discrepancy may militate against a finding of certainty, it does not prohibit it. The trial court correctly awarded prejudgment interest under Civil Code section 3287, subdivision (a).

*Unliquidated*

The trial court also exercised its discretion to award prejudgment interest on unliquidated damages under Civil Code section 3287, subdivision (b). It awarded $161,896.89 in prejudgment interest on 25 PCOs from August 7, 2001, the date of the project's completion. The court found that District either accepted FTR's price or had information to determine the amount of FTR's damages at the time of completion. District complains the amount of interest awarded exceeded the $159,968.31 awarded in damages on these PCOs. But the trial court faulted District for the failure to pay the

16

damages more than 10 years earlier.  Under the circumstances, District will not be heard to complain that the interest exceeded the principal.

District complains that the court awarded interest on other PCOs and on delay and disruption damages from November 4, 2008, the day the presentation of the evidence in trial concluded.  District points out that the trial court did not finally determine the amount of damages on those items until months after November 4, 2008.  District's argument does nothing more than point out that on November 4, 2008, the damages were not liquidated.  But Civil Code section 3287, subdivision (b) allows prejudgment interest on unliquidated damages.

Of course, the amount of prejudgment interest may have to be adjusted to the extent the trial court finds the PCOs on which it awarded damages were not timely under Article 37D of the contract.  Except to that extent, the trial court did not err in awarding prejudgment interest.]]

*Attorney Fees*

The trial court awarded FTR $3.85 million attorney fees.  The contract did not contain an applicable attorney fee clause.  The only basis for the award was section 7107.  Section 7107 provides for an award of attorney fees incurred in obtaining the release of retention monies withheld under the contract.  In this case, the amount withheld was $676,436.40.

The trial court found that the $3.85 million award was justified because District raised an "unclean hands" defense to FTR's action, including its action under section 7107.  The court determined that by raising the unclean hands defense, issues in 40 percent of the pretrial phase and 75 percent of the trial phase of the action became "inextricably intertwined."

FTR's counsel did not submit itemized time records, estimates of time spent on discrete tasks, billings submitted to the client or records of payments made for work done.  Instead, counsel submitted estimates of time spent prepared years after the work was performed.

17

Questioning counsel's estimates, the trial court undertook its own analysis of the evidence and the record. Some analysis involved events that occurred prior to the time the case was assigned to the court. The court concluded the reasonable lodestar award of fees is $3.5 million. In consideration of the factors stated in *Serrano v. Priest* (1977) 20 Cal.3d 25, 49, the court added 10 percent to the lodestar, for a total award of $3.85 million.

District argues that without time sheets, billing entries or reliable testimony, the court had no foundation for determining how much time counsel spent over 10 years of litigation. But here the trial court made its own determination of fees based on its analysis and the record. A trial court may award fees solely on the basis of the experience and knowledge of the trial judge. (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227.) That some proceedings occurred prior to the assignment of the action to the trial court, does not prevent the court from estimating fees based on the record.

District argues the trial court failed to apportion the fees between those spent on FTR's cause of action pursuant to section 7107 and the other causes of action. FTR answers that no apportionment is required for fees incurred for representation on an issue common to a cause of action in which fees are appropriate and one in which fees are not allowed. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555.)

The linchpin in the trial court's finding of inextricably intertwined issues is District's unclean hands defense. FTR argued that it was required to prevail on its other causes of action in order to defeat the unclean hands defense to its section 7107 cause of action. The trial court essentially accepted the argument.

The trial court had previously found, however, that the unclean hands doctrine did not apply to any of FTR's causes of action. The court stated: "The defense of unclean hands arises from the maxim: 'He who comes into Equity must come with clean hands.' *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048. Whether the doctrine

18

of unclean hands applies is a question of fact.  *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631.  [¶]  The *Blain* court enunciated a three-pronged test to determine the effect to be given to the plaintiff's unclean hands conduct.  Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries.  *Blain*, *supra*, . . . at p. 1060; accord, *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 618-621; *CrossTalk Productions*, *supra*, [at pp. 641-643].  [¶]  FTR contends, and the District concedes, that there is no analogous case law supporting the application of the unclean hands defense to the facts present here.  The Court therefore finds that the District failed to meet the first prong stated in *Blain*.  That finding alone is sufficient to warrant the denial of the defense.  *CrossTalk Productions*, *Inc.*, *supra*, [at pp. 641-642] (defense rejected, court noting that '[d]efendant has cited no authority finding unclean hands generally to be a defense to [similar] claims'); *In re Brandie W.* (1984) 157 Cal.App.3d 110 (defense rejected because 'neither party has cited any case from this state applying the clean hands doctrine to facts analogous to those before us.  Our own research has likewise been unfruitful.')"

FTR argues that because the application of the doctrine of unclean hands is a question of fact, the case had to be tried in order to determine the defense did not apply.  It claims that rarely can an unclean hands defense be resolved on a legal basis.  (Citing *CrossTalk Productions, Inc. v. Jacobson*, *supra*, 65 Cal.App.4th at p. 641.)  It points out that the trial court found there is no analogous case law supporting the application of the unclean hands defense "to the facts presented here."

Although the application of the unclean hands defense is usually a question of fact, under appropriate circumstances it may be determined as a matter of law.  (See, e.g., *Mendoza v. Ruesga* (2008) 169 Cal.App.4th 270, 279 [holding as a matter of law unclean hands defense does not apply].)  Here because there is no analogous case applying the doctrine of unclean hands as a defense to an action pursuant to section 7107 the doctrine can be determined as a matter of law.

19

Not only is there no analogous case applying the doctrine to an action pursuant to section 7107, there are analogous cases holding as a matter of law that the doctrine does not apply to such statutory causes of action.

In *Mendoza v. Ruesga*, *supra*, 169 Cal.App.4th 270, a group of immigrants sued an immigration consultant alleging violations of the Immigration Consultants Act (ICA). (Bus. & Prof. Code, § 22440 et seq.) The defendant raised unclean hands as a defense based on the immigrants' undocumented status. The court held the doctrine of unclean hands inapplicable as a matter of law stating: "Plaintiffs contend that as a matter of law the unclean hands doctrine is inapplicable to their cause of action under the ICA because it is based on Ruesga's violation of statutes intended to protect consumers. [Fn. omitted.] We agree with plaintiffs. 'It is true that when the Legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding . . . that he has shared in the illegal transaction. The protective purpose of the legislation is realized by allowing the plaintiff to maintain his action against a defendant within the class primarily to be deterred.' [Citation.]" (*Id.*, at p. 279; see also *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 543 [holding defense of unclean hands does not apply to an action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)].)

Here section 7107 is intended to protect one class of persons (public works contractors) from the activities of another (public entities). As a matter of law the doctrine of unclean hands does not apply.

It may be that as to other causes of action in this case, the matter had to be tried to determine whether unclean hands applied. But no factual findings were necessary to determine that the doctrine of unclean hands does not apply to an action under section 7107. The issues in FTR's action pursuant to section 7107 were not inextricably intertwined with other issues in the case.

20

It is beside the point that District urged the trial court to wait until the end of trial to rule on its unclean hands defense. The question is not when the court rules, but whether there are common issues that must be determined to resolve both a cause of action for which fees are allowed and a cause of action for which fees are not allowed. Where, as here, there are no such common issues, a defendant may recover attorney fees relating solely to the cause of action for which fees are allowed. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.)

*Conclusion*

The matter is reversed and remanded to the trial court with instructions to (1) limit the award of attorney fees to fees incurred solely in relation to FTR's cause of action under section 7107; [[(2) determine which, if any, of FTR's extra work claims were not timely under Article 37D of the contract; and (3) to adjust the award of prejudgment interest, if necessary, to accord with any reduction in the damage award.]] In all other respects, the judgment is affirmed.

Each party is to bear its own costs.

CERTIFIED FOR PARTIAL PUBLICATION.


GILBERT, P. J.


We concur:



YEGAN, J.



PERREN, J.


21

William Q. Liebmann, Judge

Mark S. Borrell, Judge

Superior Court County of Ventura

_____


Baute Crochetiere & Gilford, Andrew M. Gilford, David P. Crochetiere; Negele & Associates, James R. Negele, Jonathan R. Hickman for Defendant and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Christian M. Keiner, Chelsea R. Olson, James P. Wiezel for Education Legal Alliance of the California Schools Board Association as Amici Curiae on behalf of Defendant and Appellant.

Raisin & Kacvioglu, Bradley A. Raisin, Horwitz, Cron & Armstrong, John R. Armstrong for Plaintiff and Respondent.

Cox, Castle & Nicholson, Kenneth B. Bley, Randy P. Orlik, Susan S. Davis, Bradley A. Raisin, for Intervener and Respondent.