Filed 10/1/20  San Vicente Investment, LP v. Trammell Crow Santa Monica Development, LLC CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAN VICENTE INVESTMENT, LP, | B296147 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC120042) |
| v. | |
| TRAMMELL CROW SANTA MONICA DEVELOPMENT, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from order of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

_____

Vivoli Saccuzzo, Michael W. Vivoli and Jason P. Saccuzzo for Plaintiff and Appellant.

Glaser Weil Fink Howard Avchen & Shapiro, Garland A. Kelley, Amin Al-Sarraf, and Elizabeth G. Chilton, for Defendants and Respondents.

_____

Plaintiff San Vicente Investment, LP (San Vicente) challenges an award of over $2 million in attorney fees to defendants Trammell Crow Santa Monica Development, LLC, 301 Ocean Development, LLC, Trammell Crow Company, and Trammell Crow Acquisitions I-II, Inc. (collectively, Trammell), following a judgment in Trammell's favor. San Vicente argues that the lower court's award of attorney fees reflects an abuse of discretion, because (1) Trammell did not provide a sufficient evidentiary basis for its fee motion, and (2) the amount the court ultimately awarded was "facially unreasonable." (Boldface and capitalization omitted.) We disagree on both points.

The court was acting well within its discretion in granting fees based on the court's review of the record and independent understanding of what constitutes reasonable attorney fees, as supplemented by the attorney declaration Trammell provided. Nor has San Vicente identified any basis on which we could conclude the fee amount awarded was so "manifestly excessive in the circumstances" that the court abused its discretion in deeming it to be reasonable. (*Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 782 (*Bonta*).) Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Litigation Below*

The facts leading to San Vicente's lawsuit are fairly straightforward. As summarized by this court in an unpublished opinion deciding a separate appeal from the underlying judgment:[1]

---

[1] On our own motion, we take judicial notice of the record in that case, *San Vicente Investment, LP v. Trammell Crow Santa Monica Development, LLC* (May 28, 2020, B291720) [nonpub. opn.] (*San Vicente I*). (See Evid. Code, § 452, subd. (d).)

"In the go-go days of 2007, San Vicente . . . and Trammell Crow Santa Monica Development, LLC (TCSMD) formed a limited liability company named 301 Ocean Development, LLC (the Company) to redevelop a coastal property in Santa Monica. Although redevelopment efforts were pursued once the Great Recession hit, the permits necessary to break ground were never issued and construction never commenced.  In 2013, TCSMD (who was the Company's managing member) ended up selling the property to a third party.  [¶]  [San Vicente] then filed a lawsuit against TCSMD . . . alleging causes of action including breach of contract, breach of fiduciary duty, and fraud.  [San Vicente] claimed TCSMD reneged on its obligation to obtain the final building permits for the project, failed to make a required capital contribution to the Company (which if made would have been distributed to [San Vicente]), improperly took out a loan secured by the property, and wrongfully sold the undeveloped property 'to cover its tracks and make a fast get away.'  [¶]  TCSMD asserted that it complied with its obligations, and expended close to $11 million of its own money in efforts to develop the property. When the process became prohibitively expensive, and the project's viability uncertain due to the significant downturn in the real estate market, TCSMD exercised its right as managing member for the Company to call it quits, and put the property on the market." (*San Vicente I*, *supra*, B291720, p. 2.)

The parties litigated San Vicente's claims for over five years. The litigation involved, inter alia, two rounds of demurrers, a protracted discovery dispute, efforts by San Vicente to reopen discovery once concluded, and two rounds of largely successful motions for summary adjudication by Trammell.  (*San Vicente I*, *supra*, B291720, p. 12.)  From 2015 until early 2018, San Vicente tried through various means to convince the court to change the

3

summary adjudication rulings.  These efforts continued through the final status conference in February 2018 (*id*. at p. 13), and included, inter alia:  motions for reconsideration of various aspects of the summary adjudication rulings and related evidentiary rulings (see, e.g., *id*. at p. 13, fn. 4), supplemental briefing and multiple hearings on the court's authority to reconsider those rulings, motions and supplemental briefing seeking discovery related to issues summarily adjudicated, oppositions to Trammell's motion in limine based on the summary adjudication rulings, and efforts to amend the complaint three weeks before trial. (*Id*. at p. 13 & fn. 4.)  San Vicente was ultimately unsuccessful in reviving the issues removed from the case via summary adjudication, such that only one issue remained to be tried:  the contours of San Vicente's right of first refusal, based on which San Vicente asserted breach of contract, breach of fiduciary duty, fraud, and declaratory relief causes of action.  (*Id*. at pp. 13–14.) The court began a limited bench trial on this issue.  After the parties submitted written opening statements, however, San Vicente struck the only allegations creating a triable issue of fact, resulting in a nonsuit that disposed of the remainder of the case.  (*Id*. at pp. 14–15.)  The court entered judgment in Trammell's favor on June 11, 2018.  San Vicente appealed the judgment, attacking specifically the court's summary adjudication and related motion rulings.  This court found no error and affirmed.  (*Id*. at pp. 2, 17–31.)

### B.     *Trammell's Motion for Attorney Fees*

Trammell timely moved for attorney fees and costs, citing Civil Code section 1717 and the attorney fees provision in the parties' agreement, which entitles the "prevailing party" in a "legal action to enforce . . . rights under [the] [a]greement" "to recover from the losing party its reasonable attorneys' fees and

4

costs[,] in addition to any other relief to which [the prevailing party] is entitled." Trammell sought a total of $2,349,378.93 ($114,771.72 in costs, which are not at issue on appeal, and $2,234,607.21 in attorney fees). Trammell supported its motion with a 22-page declaration of Amin Al-Sarraf, an attorney at Glaser Weil Fink Howard Avchen & Shapiro LLP (Glaser), the law firm representing Trammell in the litigation with San Vicente. Al-Sarraf was the lead associate[2] on the matter from October 2013 until January 2015, at which time he left Glaser for approximately three years, returning in January 2018 and resuming his role as the lead associate on the case.

Al-Sarraf's declaration identified each Glaser timekeeper— that is, each attorney, paralegal, or litigation support staff member who worked on the case—and listed their qualifications. It further provided the billing rate for each timekeeper for each year of the litigation, and attested to the reasonableness of those rates based on Benchmark Litigation and the National Law Journal surveys of billing rates charged by firms similar to Glaser in size and reputation.

Al-Sarraf declared that he was familiar with Glaser's time-keeping and billing procedures, and that he had "reviewed the bills and invoices containing the individual entries for work performed by each attorney . . . [b]ased upon . . . [which he provided] a summary of the work performed by individual attorneys, paralegals and staff . . . from 2013 to 2018" on the San Vicente matter. Al-Sarraf's declaration presents this summary in the form of seven charts, one for each of seven identified phases of the litigation (for example, the "written and document discovery"

---

[2] Al-Saraf was a senior associate at Glaser at the time of his declaration, and is now a partner there.

phase and the "mediation [and] settlement" phase). (Boldface, underlining and capitalization omitted.) Each chart lists the total hours spent and the total fees billed by each Glaser timekeeper for the applicable phase of litigation. The charts identify several tasks included in each phase (for example, "[p]repare and file answer to second amended complaint," "[l]egal research for reply regarding demurrer," and "[o]ppose . . . ex parte application regarding discovery cut-off"), but do not break down the number of hours billed to perform any specific tasks.

## C.    *The Court's Ruling Awarding Attorney Fees*

In a written tentative ruling on the fee motion, the court did not take issue with the number of hours for which Trammell was requesting fees, noting instead that Trammell was "not unjustified in seeking a large fee award," given "that this matter involved intense law and motion practice, and lasted over five years." The court disagreed, however, with Trammell's request for certain fees paid to indemnify a third party and with the billing rates for certain Glaser timekeepers. The court gave Trammell the option of filing a supplemental declaration omitting the indemnification-related fees and using reduced rates specified by the court to recalculate the fee request. Trammell ultimately did so. Following a hearing on the motion, the court granted Trammell's motion and awarded $2,135,688.75 in attorney fees, the reduced amount reflected in the supplemental declaration, in addition to $114,771.72 in costs, for a total of $2,250,460.47.

The judicial officer presiding over the fee motion proceedings (the Honorable Judge Mark A. Young) had not been involved in the litigation before that point. Judge Young noted at the hearing, however, that in addition to reviewing the Al-Saraff declaration, he had "go[ne] through the file, both online and the physical file,

6

and . . . look[ed] at the amount of filings; the quality [and] the quantity of work that was prepared."

## STANDARD OF REVIEW

The legal basis for an award of attorney fees is reviewed de novo (see *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751), but the parties do not dispute that such a basis exists here. As to the amount of a fee award, we review for an abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095, quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 45; see *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, supra*, 3 Cal.5th at p. 751.) In reviewing for an abuse of discretion, we may not reverse a trial court's award " ' "merely because reasonable people might disagree." ' " (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249–1250.) In addition, an attorney fees award will not be set aside as unreasonable "absent a showing that it is manifestly excessive in the circumstances." (*Bonta, supra*, 97 Cal.App.4th at p. 782.)

## DISCUSSION

San Vicente argues that the trial court order granting Trammell's request for attorney fees reflected an abuse of discretion for two reasons: (1) Trammell failed to support its fee request with admissible evidence regarding the amount of fees sought; and (2) the amount of fees awarded was unreasonable on its face. Neither presents a basis on which we could conclude the trial court abused its broad discretion in determining reasonable attorney fees.

### A.     *Support for Fee Award*

California law applies to the San Vicente's argument regarding the evidentiary support for Trammell's motion, and neither party argues otherwise. (See *Sadberry v. Griffiths* (1961)

7

191 Cal.App.2d 610, 614 [the forum's law applies to evidentiary issues, including admissibility and evidentiary presumptions, despite choice of law provision].)  Under California law, an attorney declaration may suffice to support a request for attorney fees, and detailed billing or timekeeping records are not necessary.  (See, e.g., *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)  San Vicente argues the Al-Saraff declaration was nevertheless an insufficient basis on which to award the attorney fees sought, because Al-Saraff was not an attorney at Glaser for three years of the litigation, such that his testimony regarding work performed by Glaser attorneys during those years lacks foundation and is inadmissible hearsay.

We need not determine whether the Al-Saraff declaration is inadmissible hearsay in whole or in part, however, because "for the purpose of fixing attorney's fees," the court "is not bound by technical rules of evidence, since it is not trying an issue in the case and is merely seeking information upon which to base its order." (*Frank v. Frank* (1963) 213 Cal.App.2d 135, 138; *Rose v. Rose* (1895) 109 Cal. 544, 546 (*Rose*) [same]; see *Padilla v. McClellan* (2001) 93 Cal.App.4th 1100, 1106–1107 ["courts determine the reasonableness of attorney fees every day by ruling on motions," based on "declarations only, not live testimony" in "hearings [that] are usually short" and "[t]rial courts are afforded wide discretion to determine the amount of attorney fees within that framework"].)

Moreover, "courts have long held that affidavits on information and belief may be sufficient in a variety of contexts where the facts would otherwise be difficult or impossible to establish."  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 87.)  Such is the case with attorney fee awards. Were the technical rules of evidence to apply in full force, a fee

8

motion could potentially require countless declarations of attorneys and paralegals attesting to the work they personally performed on a matter, or reams of bills accompanied by authenticating testimony. Thus, in considering motions for attorney fees, courts have accepted supporting attorney declarations that attest, based on the attorney's review of billing records, to work performed by others. (See, e.g., *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 63–64 [affirming fees awarded on basis of a single declaration from counsel describing work done by two partners]; *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1007 [work of one attorney was described in another attorney's declaration and "[a]lthough no time records were kept for . . . [the second attorney's] work," the time "seem[ed] reasonable and the court accept[ed] it" as a basis for fee award].) Indeed, attorney declarations providing a "categorical breakout of time expended by each attorney and paralegal . . . has been specifically lauded . . . as 'an especially helpful compromise between reporting hours in the aggregate (which is easy to review, but lacks informative detail) and generating a complete line-by-line billing report (which offers great detail, but tends to obscure the forest for the trees).' " (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 700 (*Syers*), quoting *In re HPL Technologies, Inc. Securities Litigation* (N.D.Cal. 2005) 366 F.Supp.2d 912, 920.)

San Vicente argues that cases in which courts have accepted such attorney declarations are distinguishable, because the declaring attorneys in those cases, unlike Al-Saraff, were employed by the relevant firm without interruption while the legal work at issue was being performed.[3] But the court here did not rely

---

[3] The only other cases San Vicente cites for the proposition that admissible evidence is required to support a fee motion do not even mention admissible evidence. Rather, the portions of

solely on the Al-Saraff declaration in granting Trammell's fee motion.  The court also relied on its own review of the file.  In some instances, "[a] trial court may award fees solely on the basis of the experience and knowledge of the trial judge."  (*East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742, 750 (*East West Bank*); *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 ["[a]n award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence"]; *Clejan v. Reisman* (1970) 5 Cal.App.3d 224, 241 (*Clejan*) ["the knowledge and experience of the trial judge" may be "sufficient" to support the reasonable value of attorney services that are the subject of a fee request].)  The trial court's review of the record may provide a basis even if, as here, the judicial officer who decided the fee motion lacked percipient knowledge of the attorneys' work throughout the entire litigation.  Such a judicial officer could properly draw on his broader experience, not just percipient knowledge of a particular case, to inform an analysis of what constitutes a reasonable rate or a reasonable number of hours for a particular task.  (See *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1398 [" 'trial court could make its own evaluation of the reasonable worth of the work done in light of the nature of the case' "], quoting *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587; see also *East West*

---

these cases to which San Vicente cites reflect the uncontroversial point that a party seeking fees bears the burden of establishing the reasonableness of those fees (see *Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290; *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816), and that the court has discretion to determine what documentation meets this burden. (*See Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320–1321 (*Christian Research Institute*).)

*Bank, supra*, 235 Cal.App.4th at p. 750 ["[t]hat some proceedings occurred prior to the assignment of the action to the trial court, does not prevent the court from estimating fees based on the record"].) For example, in *East West Bank*, the party seeking attorney fees "did not submit itemized time records, estimates of time spent on discrete tasks, billings submitted to the client or records of payments made for work done. Instead, counsel submitted estimates of time spent prepared years after the work was performed." (*East West Bank*, *supra*, at p. 750.) The court "[q]uestion[ed] counsel's estimates" of time spent and "undertook its own analysis of the evidence and the record," and "made its own determination of fees based on its analysis and the record." (*Ibid.*) The party challenging the fee award on appeal argued that the court lacked a sufficient foundation for such an analysis, in part because the judicial officer deciding the motion had not presided over several years of the 10-year litigation, and thus had no percipient knowledge of much of the proceedings. (*Ibid.*) The Court of Appeal rejected this argument, explaining: "A trial court may award fees solely on the basis of the experience and knowledge of the trial judge. [Citation.] That some proceedings occurred prior to the assignment of the action to the trial court, does not prevent the court from estimating fees based on the record." (*Ibid.*)

Thus, the trial court in *East West Bank* did not have any timesheets or billing records (as was the case here); instead, it had an attorney declaration it deemed insufficient to support a fee award (as San Vicente argues is the case with the attorney declaration here). As did the trial court here, the trial court in *East West Bank* conducted its own review of the record, based on which it calculated a reasonable fee amount, including fees resulting from years' worth of proceedings over which the judicial officer deciding

11

the fee motion had not presided.  *East West Bank* concluded this was not an abuse of discretion; we reach the same conclusion here.

San Vicente notes that Trammell chose not to offer other— and, according to San Vicente, more reliable—support for its fee motion, such as declarations of the attorneys performing the majority of the work in the case, a declaration of a supervising partner, or the five years of billing records on which Al-Saraff based his declaration.  Certainly, Trammell could have done so, and this may have constituted stronger support for the fee request.  But the Al-Saraff declaration provided, if nothing else, information about the amount of work performed by Al-Saraff himself and about attorney billing rates, which the trial court considered along with its own review of the record and general experience regarding the time reasonably necessary to complete various litigation tasks.  We can find no abuse of discretion in the court's having done so, even if other, more direct factual bases may have provided a stronger foundation for the fee award.  (See *Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 762, quoting *People v. Preyer* (1985) 164 Cal.App.3d 568, 573–574 [" ' "[a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge" ' " in reviewing for an abuse of discretion].)

### B.    *Reasonableness of the Fee Award*

San Vicente next argues that the fees awarded Trammell were "facially unreasonable."  (Boldface and capitalization omitted.)  The parties disagree as to whether California or Delaware law should govern the reasonableness issue.  We need not decide the choice of law issue, as the two jurisdictions' laws are in accord regarding how to determine reasonableness.  Namely, both states' laws identify the same primary factors for a court to consider in determining a reasonable amount of attorney fees:  the nature and

difficulty of the litigation, the time and skill required and employed, the qualifications of the attorneys, the results obtained, and the market rate for similar legal services in the relevant geographic area. (See, e.g., *Clejan, supra,* 5 Cal.App.3d at p. 241; *ASB Alleg. Real Est. v. Scion Breckenridge* (Del.Ch. 2012) 50 A.3d 434, 445–446 (*ASB Alleg.*), revd. on other grounds in *Scion Breckenridge v. ASB Allegiance* (Del. 2013) 68 A.3d 665, 684–688.)[4]

---

[4] Specifically, "the major factors to be considered in determining the reasonableness of attorneys' fees" (*Clejan, supra,* 5 Cal.App.3d at p. 241) in California have been summarized as " 'the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed.' " (*Ibid.*, quoting *Berry v. Chaplin* (1946) 74 Cal.App.2d 669, 679.) Similarly, under Delaware law, " '[t]o assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct' " (*ASB Alleg., supra*, 50 A.3d at p. 445, quoting *Mahani v. EDIX Media Group, Inc.* (Del. 2007) 935 A.2d 242, 245–246), which are: (1) "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"; (2) "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer"; (3) "the fee customarily charged in the locality for similar legal services"; (4) "the amount involved and the results obtained"; (5) "the time limitations imposed by the client or by the circumstances"; (6) "the nature and length of the professional relationship with the client" (*ASB Alleg., supra*, at pp. 445–446); and (7) " 'whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary.' " (*Id.* at p. 446, quoting *Mahani v. EDIX Media Group, Inc., supra*, at pp. 247–248.)

The trial court could have logically concluded that all of these factors support the reasonableness of the fee amount ultimately awarded. San Vicente argues to the contrary, based in part on its characterization of the litigation as involving only straightforward legal issues and "no trial to speak of." Even if the merits of the dispute required only a "plain-language interpretation of the [o]perating [a]greement and amendments thereto," however, this would not necessarily mean that litigating the case was simple or easy. The strategic approach taken by opposing counsel may expand the work needed to respond to otherwise straightforward legal issues. (See, e.g., *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1167 ["in determining whether to award attorney fees to one party, the court may also consider the other party's trial tactics"]; *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 168 [affirming attorney fees award based on the case's "stunning complexity, occasioned, for the most part, by husband's intransigence"]; *Danenberg v. Fitracks, Inc.* (Del.Ch. 2012) 58 A.3d 991, 1000 (*Danenberg*) [awarding higher than usual fees on party's "serial reversals of position and general intransigence"].)

Here, the record does not suggest that the legal work this litigation required was minimal or simple, and it certainly does not support that the trial court abused its discretion by concluding otherwise. The record reflects an extensively litigated dispute over a long period of time, including voluminous pretrial motion practice and a lengthy discovery dispute. The record does not suggest (nor does San Vicente argue) that this was the result of Trammell's litigation tactics; to the contrary, the record suggests that much of the pretrial motion work was necessitated by San Vicente's fighting the court's summary adjudication rulings on numerous fronts for almost three years. As such, the court was well within

14

its discretion to conclude that the case required many hours of work by Trammell's attorneys, and to further conclude that the large number of hours for which Trammell requested fees was reasonable.

San Vicente also contrasts the "shocking" seven-figure amount of the fee award—over $2.1 million—with the $299,935 San Vicente represents it incurred in attorney fees over the life of the matter. This juxtaposition of the two parties' attorney fees does not speak to the reasonableness of those fees, however, because San Vicente has not identified any reason why either the hourly rates of the two firms or the amount of time each spent on the litigation should be comparable. Nor do we agree with the underlying premise of San Vicente's argument that parties to a lawsuit necessarily spend a comparable amount of time working on the matter. As a matter of common sense, this is not necessarily true. For example, the scope of work needed to respond to discovery requests is in part a function of the extent and nature of the responding party's records and record-keeping practices; what may be a simple discovery response for one party may require extensive work for another. Moreover, it is within the discretion of the trial judge to determine whether the amount of work performed was reasonably necessary, and the judge may rely on an attorney's declaration to this effect in exercising that discretion. (See *Syers, supra,* 226 Cal.App.4th at pp. 698–699 [court's acceptance of defense counsel's computation of hours reasonably spent on case not an abuse of discretion]; see also *Christian Research Institute, supra,* 165 Cal.App.4th at p. 1321 ["court tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work"]; *ASB Alleg., supra,* 50 A.3d at p. 446 ["A party seeking fees carries its burden to justify the

15

services performed by showing that they were 'thought prudent and appropriate in the good faith professional judgment of competent counsel.' [Citation.] 'For a [c]ourt to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided.' [Citation.]"].) Because San Vicente merely points to the disparity between the two parties' fee amounts without also identifying any basis for the conclusion that the parties should have expended the same or a similar amount of effort, the juxtaposition of the two fee amounts does not suggest the trial court abused its discretion.

As to San Vicente's argument that the fees were excessive because six different attorneys worked on the case over the course of five years, this argument is supported neither by the record, nor the realities of litigating a case for half a decade. Three of the six attorneys were associates who never worked on the case at the same time. The time demands of litigation ebb and flow, and attorneys are involved in multiple matters at once; the confluence of these two realities may lead to temporary changes in a legal staffing roster. Such changes do not suggest duplicative work or overstaffing. San Vicente's only argument to the contrary is a claim, unsupported by legal authority or record citation, that six attorneys are too many for this case. The court did not abuse its discretion by finding this argument unpersuasive.

Finally, San Vicente argues the trial court could not have properly concluded the fee request was reasonable, because Trammel provided insufficiently detailed documentation supporting its fee request, and this lack of detail "prevented any critical analysis." This is simply a rephrasing of San Vicente's evidentiary support argument, and fails for the same reasons that argument fails. Namely, " '[b]ecause time records are not required under California law . . . , there is no required level of detail that counsel

16

must achieve' " in supporting the reasonableness of its fee request. (*Syers, supra,* 226 Cal.App.4th at pp. 699, quoting Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2014 supp.) § 9.84, p. 9-71.) Nor would we reach a different result, were we to apply Delaware law, under which a party seeking fees may likewise rely solely on " 'a good faith estimate' of the fees and expenses that the party contends should be approved." (*Danenberg, supra,* 58 A.3d at p. 995, quoting *Fasciana v. Electronic Data Systems Corp.* (Del.Ch. 2003) 829 A.2d 160, 177; Del. Chancery Ct. Rules, rule 88 [requiring affidavit or letter "itemizing (1) the amount which has been received, or will be received, . . . and (2) the expenses incurred and services rendered"].) Delaware law, like California law, leaves the level of detail required in such submissions within the discretion of the trial court. (*Danenberg, supra*, 58 A.3d at p. 995.) Exercising this discretion and "[d]etermining the reasonableness of amounts sought 'does not require that [a] [c]ourt examine individually each time entry and disbursement,' " because "[d]iscussing specific invoices typically 'would neither be useful nor practicable.' " (*Id.* at p. 997, quoting *Weichert Co. of Pennsylvania v. Young* (Del.Ch. May 1, 2008, Civ. A. No. 2223-VCL) 2008 WL 1914309 at p. *2.)

Finally, the multi-million dollar amount of the fee award alone does not, as San Vicente implies, change the level of or type of support needed to establish reasonableness. San Vicente's naked contention that the declaration "was simply not enough to support the seven-figure fee claim" ignores the trial court's reliance on its review of the record and its own experience, and in any event does not alone establish the award was "manifestly excessive in the circumstances" (*Bonta*, *supra*, 97 Cal.App.4th

17

at p. 782). The record suggests that, far from blindly granting a massive fee request without proper support, the trial court considered the record and the details in the Al-Saraff declaration, based on which it reduced the fee amount awarded in the ways it deemed appropriate. The court did not abuse its discretion.

## DISPOSITION

The order is affirmed. Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                                ROTHSCHILD, P. J.

We concur:



            CHANEY, J.



            BENDIX, J.

18